STATE EX REL, FOREMAN, DISTRICT ATTORNEY v. WHEATLEY
ET AL., BOARD OF SUPERVISORS.

[74 South. 427, *In Banc.*]

1. CONSTITUTIONAL LAW. *Persons entitled to raise. Constitutional questions.*

   Since the boards of supervisors of the several counties hold their office by virtue of the constitution itself and prior to the enactment of Law 1916, chapter 98, their final authority to approve the assessment rolls was unchallenged, when required by the state board of equalization under said act to make rar reaching corrections in an assessment roll already approved, the county board of supervisors, may raise the question of the constitutionality of the act.

2. CONSTITUTIONAL LAW. *Statute. Construction in favor of validity.*

   In the consideration of a statute it is the duty of the court if possible to uphold and not destroy the statute.

3. TAXATION. *Equalizing assessment. Statutes.*

   Since the object of Laws 1916, chapter 98, is to assess all property at its true value to the end that all taxable property shall bear its just proportion of the burden and the general constitutional scheme of uniformity of taxation is binding on assessors, boards of supervisors and courts and also upon the state tax commission it will in the absence of a proceeding for their equalization be presumed, that the assessment on the lands of the county, were correct, and such act, providing for equalization of assessment by the state board of tax commissioners is not invalid because in the year 1916 there could be no equalization of the land rolls, although the commissioners were allowed to equalize the assessment on personal property.

4. CONSTITUTIONAL LAW. *Taxation. Deprivation of property without due process. What constitutes.*

   Under Laws 1916, chapter 98, creating the state board of tax commissioners and authorizing such board to equalize assessments made by the boards of supervisors of the several counties, providing in section 5 that the state board may add a fixed per cent to the assessed valuation of any class of property in any county if the valuation was too low, provided such rate shall not exceed the actual valuation of the property, and section 6 declaring that upon giving notice by the chairman of the board of state tax commissioners of changes or corrections to be made

in the county tax rolls, it shall be the duty of the county board of supervisors to call a meeting after giving five days' notice by posting at the court house or publishing in a newspaper of the county and at such meeting the board shall correct, the county valuation, upon the class or classes of property specified by the board of state tax commissioners so as to make the same conform to the findings of the board of state tax commissioners by applying uniformly to the specified class or classes of property the fixed increase or decrease specified. The court held that in view of Code 1906, section 81, authorizing an objecting tax payer to appeal from the order of the board of supervisors to the circuit court of his county, the act cannot be deemed to work a deprivation of property without due process of law on the theory that assessments upon the order of the state board of tax commissioners are to be raised without notice to the tax payers and without an opportunity for a tax payer whose property was assessed at its true valuation to object to an increase, but it must be assumed, in accordance with the construction by the state board of tax commissioners, that the provisions for notice by publication were intended to give tax payers an opportunity to be present at the hearing, and that the board of supervisors should not, in increasing the assessments increase assessments upon property already listed at its true value.

5. CONSTITUTIONAL LAW. *Statutes. Construction in favor of validity.*
   If there are two different interpretations of a statute, one of which would render the act constitutional, and the other unconstitutional, it is elementary that the court should adopt that view and construction which would harmonize the act with the constitution.

6. STATUTES. *Construction. Administrative construction.*
   The construction which a department of government has placed upon the very law under which it was created and which it is sworn to enforce should be both suggestive and persuasive with the courts.

7. DUE PROCESS OF LAW. *Deprivation of property.*
   Notice by publication in reference to the assessment of property is a sufficient compliance with the due process clause of the constitution.

8. TAXATION. *Assessment. Equalization of taxes.*
   Since section 112, Constitution 1890, declares that taxation shall be uniform and equal throughout the state and that property shall be taxed in proportion to its value, chapter 98, Laws 1916, providing for equalization of assessments by the state board of tax

commissioners, is not invalid as superseding the constitutional scheme of listing and valuing property by an assessor in each county and having the assessments equalized by the county board of supervisors; the authority of the county board being purely statutory, and the provisions for equalization merely following out those provisions for uniformity of taxation in propertion to value.

9. TAXATION. *Assessments. Increase.*

While Laws 1916, chapter 98, authorizes the state board to increase or decrease the total valuation of any class of property in any county to the end that there may be an equalization as between counties; in doing this, the board has no authority to increase the assessment of any property above that placed by one or more of the highest assessed counties of the state.

APPEAL from the circuit court of Washington county. HON. F. E. EVERETT, Judge.

Proceeding by the state, on the relation of J. M. Foreman, district attorney, for writ of mandamus against George Wheatley and others, constituting the board of supervisors of Washington county.

From a judgment dismissing the petition, the state appeals.

Appellees constitute the board of supervisors of Washington county. At their August, 1916, meeting they approved the personal assessment roll for said county; the roll was forwarded to the auditor, and by the auditor turned over to the board of state tax commissioners. The board of state tax commissioners, which will hereafter be referred to as the ''state board,'' upon consideration and comparision of the valuations with valuations in other counties and in pursuance of authority given by chapter 98, Laws 1916, creating the state tax commission, defining its powers, and prescribing its duties, ordered certain corrections to be made in the personal assessment roll of Washington county, the effect of which would be to increase the valuations of certain classes of property about nine hundred thousand dollars. In transmitting the order to correct, the state board also directed that notice be given by

the president of the board of supervisors of a special
or call meeting of the local board for the consideration
of and making the changes for the year 1916 in accord-
ance with the order of the state board, the notice to be
given in accordance with the provision of said chapter
98. The board of supervisors gave notice of this special
meeting and, upon consideration, they elected to enter
a protest against the order of the state board, and to
present their protest, and to prosecute their objections
in accordance with the statute. The state board over-
ruled their objections and entered a final order direct-
ing the increase of assessments specified in the order.
The board of supervisors thereupon declined to correct
the assessments, and upon their refusal to comply with
the order of the state board, the state, on the relation
of J. M. Forman, district attorney, filed this mandamus
proceeding to compel compliance with the order of the
state tax commission. The petition filed by the district
attorney was met by general demurrer, the several
grounds of which challenge the constitutionality of the
statute creating the state tax commission and their au-
thority and power to compel the board of supervisors
to make any changes whatever in the assessment roll.
The demurrer was by the circuit court of Washington
county sustained, and from the judgment dismissing
the petition, the state prosecutes this appeal.

The various grounds of demurrer, twelve in all, state
and restate in varying form the following points: First,
the act of the legislature in question is invalid because
it permits the state board to equalize and raise the as-
sessment of personal property without regard to the
valuation and assessment of real property. Second, the
act is repugnant to the provisions of both the Constitu-
tion of our state and the Constitution of the United
States, and deprives the taxpayer of his property with-
out due process of law in that (a) it does not afford
the owner of property an opportunity to be heard;
(b) it does not provide notice to the owner of any hear-

ing as to the amount his property is to be increased in assessment or as to the propriety of such increase; (c) the owner of property is not afforded a reasonable notice of hearing on the amount at which his property is to be assessed and valued; (d) the owner is not afforded an opportunity for a hearing before the state tax commission. Third, the act contravenes our state Constitution in that it takes the assessment of property out of the hands of assessors and boards of supervisors. Fourth, the act attempts to vest the state board with judicial powers in violation of the state Constitution. Fifth, that even if the act is constitutional the state board in this instance did not act as a board of equalization in accordance with the act itself, and did not equalize the various classes of personal property or the total personal property appearing on all the rolls of the state, but acted as a board of assessors, and raised or increased the total assessment of personal property in the state in the sum of eight million, eight hundred forty-three thousand, three hundred and nineteen dollars.

In the presentation of this case counsel for the state contend that the members of the board of supervisors in complying with the order of the state board acted as ministerial officers, and therefore have no right to question the constitutionality of the law here under attack.

*Clayton D. Potter,* for appellant.

At the 1916 session of the legislature, chapter 98 of the Laws of 1916, was enacted creating the state tax commission. For many years prior to the passage of the act under consideration it had been a matter of universal public knowledge and public concern that gross inequalities existed between the assessed valuations of property in the different counties of the state so that the burden of maintaining the state government having fallen heavier upon the citizen of some

counties than of other counties. That these inequalities have existed will not be controverted, and it was for the purpose of correcting to some extent such inequalities that the legislature was prompted to enact the law creating the state tax commission. It is not contended that this act will bring about perfect equality in assessments between the various counties of the state. A system of perfect equality in assessments for taxes has thus far been beyond the ingenuity of man to establish.

The purposes of our Constitution are just and equitable. Our Constitution declares "taxation shall be uniform and equal throughout the state. Property shall be taxed in proportion to its value." We can never hope to attain the perfect system contemplated by the Constitution; the best we can hope for is to approach nearer the constitutional ideal and standard as time goes by, as new methods and machinery for the determination of correct values are adopted, and as men who make a specialty of such matters give their time and talent to the accomplishment of the constitutional purposes.

In this connection, I will call the court's attention to the Biennial Report of the Auditor of Public Accounts of the state of Mississippi for the period ending October 1, 1915. In that report, Mr. Duncan L. Thompson, then Auditor of Public Accounts, made a tabulated statement of the assessments of real property in the various counties in this state for the year 1915. By reference to the above referred to tabulated statement, designated therein "Assessments of Real Property of the state of Mississippi for the year 1915" the court may see at a glance the inefficiency of the system of equalizing assessments in Mississippi, in so far as state taxes are concerned. There is no real attempt to even approximately assess property at its true value. As a matter of fact, the equalization of assessments in the different counties in the state is controlled largely, if

not solely, by the amount of money necessary to be realized for county purposes. As an example of inequality in assessments, I note from the foregoing report that cultivated lands in Hinds county are assessed at an average of five dollars and twenty-six cents per acre, while the same class of lands in Rankin county are assessed at five dollars and twenty cents per acre. But it is a well known fact that the average farm lands in Hinds county are worth and will bring in the market at least three times what Rankin county lands will bring. In the first place, the lands in Hinds county situated within a short distance of the city of Jackson are very valuable on account of their proximity to a market and the many conveniences afforded to those who live near a city. On the other hand, the lands near Jackson on the Rankin side of Pearl River for several miles out at least are subject to overflow and are so broken as to be of little value. A large portion of Hinds county is made up of the lands known as the ''Big Black Swamp,'' and these lands almost equal in fertility the lands in the Mississippi delta. In fact, all cultivated lands in Hinds county compared acre for acre with similar lands in Rankin county, are known to be of far greater value, for Rankin county has not as yet been nearly so highly developed as has Hinds county.

Cultivated lands in Perry county are assessed at thirteen dollars and twelve cents per acre, while cultivated lands in Washington county are assessed at thirteen dollars and eight cents per acre. Everybody can see at a glance that to assess the cultivated lands in Perry county at more than cultivated lands in Washington county is unequal and unjust.

But cultivated lands in Lamar county are assessed at fifteen dollars and twelve cents per acre, while cultivated lands in Sunflower county are assessed at nine dollars and ninety-nine cents per acre. Lands in Lamar county, on an average, would not bring fifteen

dollars and twelve cents per acre in the way of rents. in a less period than ten years, while cultivated lands in Sunflower county bring almost an annual rental equal to its assessed value of nine dollars and ninety-nine cents.

There is no necessity, however, for pursuing this comparison further, but in passing I will only pause to note that the burdens of government seem to fall more heavily under the old system of taxation upon the shoulders of those least able to bear them.

The second, third, fourth and fifth grounds of demurrer are to the same effect, that is, to the effect that under the statute under consideration sufficient notice to the property owner is not provided for, and that thus the property owner assessed is, in violation of the Constitution of the United States and of the state of of Mississippi, ''deprived of his property without due process of law.''

Section 6 of the act under consideration is as follows:

''Upon the giving of such notice by the chairman of the board of state tax commissioners of changes or corrections to be made in the county tax rolls, it shall be the duty of the president of the board of supervisors of the county affected to call a meeting immediately of said board of supervisors, after giving five days' notice by posting at the court house or publishing in a newspaper of the county, and at the said meeting the said board shall correct the county valuation upon the classes of property specified by the board of state tax commissioners, so as to make the same conform to the findings of the said board of state tax commissioners by applying uniformly to the specified class or classes of property the fixed increase or of decrease specified by the said board of state tax commissioners, and by raising or lowering all the individuals' returns of all the tax payers of the county upon the specified class or classes of property accordingly.

"If the county board of supervisors are dissatisfied with the changes and corrections thus ordered to be made by the board of state tax commissioners, the president of the board of supervisors may appoint not exceeding five witnesses to appear under oath before the said board of state tax commissioners, and the board of state tax commissioners shall then revise their action, or not, as they may think just and proper. Said witnesses must appear before the said board of state tax commissioners, in their office at Jackson, within fifteen days after the mailing of the above notice to the president of the board of supervisors, or they shall lose their right to be heard. The compensation and expenses, if any, shall be paid by the board of supervisors appointing them. The decision of the board of state tax commissioners then made shall be final and upon the rendering of their decision it shall be the duty of the board of supervisors to immediately revise and correct the county valuation, in the manner hereinbefore in this section contemplated and provided. The revised and corrected property valuations thus made shall be the fixed and legal valuation of the property for the payment of taxes, and it shall be the duty of the tax payer to pay his taxes thereon accordingly."

Section 6 provides for notice to the board of supervisors by a letter to its president. Fifteen days are given said board to appear before the state tax commission with witnesses and to object to any assessment before the same is made final.

It will be noted that in the act creating the state tax commission no power is given the state tax commission to deal with individual assessments, or with the individual. The method of equalizing assessments as between a man and his neighbor in the same county is in no wise changed. The board of supervisors in each county is still an equalizing board, and the same notice to appear as has always been given is still provided, the same right to make objections to assessments before

the board of supervisors is yet preserved, and the same right and opportunity to appeal on the part of the individual from the action of the board of supervisors is in force.

The only function bestowed upon the state tax commission is to equalize between the counties the valuation of the different classes of property. As stated, the state tax commission does not deal with the individual assessment, nor with the individual; its function is to equalize assessments as between the counties, and it deals with classes of property and not with individuals. It would be an impossibility for every one in the state whose assessments are affected to be notified and given a day in court in matters of this nature, for when the assessment of mules, for instance, is fixed by the state tax commission for Washington county it is necessarily fixed at the same time for every county in the state. It would be necessary, if each individual had a right to notice and a day in court, to notify every person in the state owning a mule to be present in Jackson on a certain day when the assessment on mules would be fixed and determined by the state tax commission. This would, of course, be impracticable, and to meet the requirements of the Constitution of the state of Mississippi and of the Constitution of the United States no such proceeding is required.

In the case of *Foster* v. *Rowe,* 128 Wis. 326, 8 Am. & Eng. Ann. Cases, 595, a similar case, the supreme court of Wisconsin says:

"It is insisted that the act is unconstitutional because it contravenes section 1, Amendment 14, of the Constitution of the United States, 'nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law.' The contention is that no sufficient notice was given the taxpayer. This contention cannot be sustained. The board acts upon the different municipalities in the county and

not upon the individual taxpayer; hence, no notice to the taxpayer is necessary. *Spalding* v. *Hill*, 86 Ky. 656, 7 S. W. 27; 1 Cooley on Taxation (3 Ed.), 786; State Railroad Tax Cases, 92 U. S. 575, 609. Some of the cases cited by counsel on this point are cases of special assessments against property owners for local improvements, where the courts have held that such assessments can be sustained only upon the theory that the lands upon which they are laid, are especially benefitted thereby; while others are cases not relating to the taxing power at all, and, so far as we can discover, have no bearing upon the question here.''

If there could have been any doubt about the principle that when a whole class is affected by a change in the valuation of property for *ad valorem* assessments that the individual taxpayer is not entitled to notice and a hearing, that doubt is dispelled by the recent case of *Bi-Metallic Co.* v. *State Board of Equalization*, 239 U. S. 441, ·36 Sup. Ct. Rep. 141, 60 Law Ed. 372. Mr. Justice HOLMES, in rendering the opinion of the court in that case said:

''Where a rule of conduct applies to more than a few people it is impracticable that every one should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meetings or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule. If the result in this case had been reached as it might have been by the state's doubling the rate of taxation, no one would suggest that the Fourteenth Amendment was violated unless every person affected had been allowed an opportunity to raise his voice against it before the body entrusted by the state Constitution with the power. In

considering this case in this court we must assume that the proper state machinery has been used, and the question is whether, if the state Constitution had declared that Denver had been undervalued as compared with the rest of the states and had decreed that for the current year the valuation should be forty per cent. higher, the objection now urged could prevail. It appears to us that to put the question is to answer it. There must be a limit to individual argument in such matters if government is to go on. In *Londoner* v. *Denver,* 210 U. S. 373, 385, a local board had to determine 'whether, in what amount, and upon whom' a tax for paving a street should be levied for special benefits. A relatively small number of persons was concerned, who were exceptionally affected, in each case upon individual grounds, and it was held that they had a right to a hearing. But that decision is far from reaching a general determination dealing with the principle upon which all the assessments in a county had been laid.''

In addition to this, we submit that under section 91, Code of 1906, the taxpayer has a right, even after the state tax commission has approved the assessment rolls and his assessment is final, in so far as the assessing power is concerned to have his case reviewed by a writ of *certiorari,* or, if his property is assessed for more than its actual value, to enjoin the enforcement of the collection of taxes upon offering to pay the correct amount.

The seventh, eighth and ninth grounds of demurrer challenge the authority of the legislature to vest the equalization of assessments as between the counties in a state tax commission. It is insisted that the power to make assessments and equalize same is vested by the Constitution in the assessors and the various county board of supervisors. In so far as the powers and duties of the assessor and the original assessment of property is concerned, no change is made in the law.

The difference between the law as it now exists and the old law is that under the old law the various boards of supervisors of the state equalized the assessments of property and this was final. Under the present system the assessments are equalized through the action of the various county boards of supervisors and the state tax commission. In other words, a complete assessment is the product of the judicial determination of the board of supervisors and of the state tax commission. Before the passage of the act in question, all powers to equalize assessments were vested by statute in the several boards of supervisors of the state; under the changed statute the boards of supervisors and the state tax commission equalize assessments.

The power, however, to equalize assessments, formerly vested in the boards of supervisors, was conferred on said boards by statute and not otherwise.

"Boards of county commissioners (boards of supervisors), are *quasi* corporations existing by virtue of the statutes or constitutions of the several states, charged with various duties and powers, judicial, legislative and executive, pertaining to the police, fiscal and civil regulations and affairs of the counties." Am. & Eng. Ency. Law. (2 Ed.), 275.

Therefore, all the powers the board of supervisors have are conferred on them. They have no common law powers.

"Police juries are political corporations, whose powers are especially defined by the legislature, and they can legally exercise no other powers than those delegated to them." *Stirling* v. *West Feliciana Parish,* 26 La. 59.

"The supervisors of a county are a corporation for special purposes and with special powers only, and beyond the special powers conferred upon them they have not capacities incident to a corporation." *Jackson* v. *Hartwell,* 8 Johns (N. Y.), 842.

In the case of *Jefferson* v. *Grafton,* 74 Miss. 435, this court said: "But it is well said in 4 Am. & Eng. Ency. Law, page 375, that 'being creatures of statute, endowed only with special powers and created for special purposes, they (the board of supervisors) can exercise only such powers as are expressly conferred by statute, or which are necessarily implied.' "

And again at page 379: "Their powers will, of course, vary in different states according to the differing grants of powers to them in such states, and the courts of judicial decision in this state holds them to the strictest limitations of their powers. As clearly put in *Howe* v. *State,* 53 Miss. 69, 'It matters not whether its action . . . be regarded as judicial, legislative or ministerial excess of authority; in either capacity it is simply void.' They can do valid acts only as empowered by law."

The power to equalize assessments is not conferred upon the board of supervisors in this state by the Constitution. The following are the only sections of the Constitution conferring powers on the boards of supervisors.

"Section 85. The legislature shall provide by general law for the working of public roads by contract or by county prisoners, or both. Such law may be put in operation only by a vote of the board of supervisors in those counties where it may be desirable."

"Section 170. Each county shall be divided into five districts. A resident freeholder of each district shall be selected, in the manner prescribed by law, and the five so chosen shall constitute the board of supervisors of the county, a majority of whom may transact business. The board of supervisors shall have full jurisdiction over roads, ferries and bridges, to be exercised in accordance with such regulations as the legislature may prescribe, and perform such other duties as may be required by law. The clerk of the chancery court of each county shall be clerk of the board of supervisors."

"Section 262. The board of supervisors shall have power to provide homes or farms as asylums for those persons who, by reason of age, infirmity or misfortune, may have claim upon the sympathy and aid of society; and the legislature shall enact suitable laws to prevent abuses by those having the care of such persons."

Every other power than those enumerated in the board of supervisors is conferred on such board by the legislature, including the power to equalize assessments. The power exercised by the board of supervisors in the matter of equalizing assessments or re-assessing property, having been conferred on the board by the legislature, could be taken away from the board by the legislature. The legislature when it placed the equalization of assessments with reference to individuals in the board of supervisors, and with reference to classes of property, and as between counties, in the state tax commission, was exercising a function it clearly had, for the legislature having conferred on the board of supervisors the powers of equalization it enjoyed, had the power, if it had seen fit, to have conferred such powers on an entirely different body. In so far as the powers conferred on the board of supervisors by the legislature are concerned, and to that extent, it is a legislative office.

*Ross A. Collins,* Attorney-General and *George Butler,* Special Counsel for Attorney-General, for appellant.

A determination of this case involves section 112 of the Constitution of 1890, which provides among other things that "property shall be assessed for taxes under general laws, and by uniform rules according to its true value." Section 190 of the Constitution which provides that the property of private corporations shall be taxed in the same way and to the same extent as property of individuals; section 172 of the Constitution which authorizes the establishment of such inferior

courts as may be necessary; sections 135 and 138 of the Constitution which provide for the election of an assessor in each county; and section 170 of the Constitution defining the jurisdiction of boards of supervisors.

At the very threshold of this case, the court is confronted with the question of the power of the board of supervisors of Washington county, to call in question the constitutionality of this act in this mandamus proceeding.

The board of supervisors in making the increases, ordered by the commission discharged purely ministerial functions and act in subordination to the commission. They have no power to review the Commission's action and have no discretion in making the increases.

The board of supervisors cannot be prejudiced or injured, or made liable in any respect, if it complies with the order of the tax commission. In making the increases, they are performing purely ministerial functions and carrying out the mandate of their superiors in the matter of equalization and subject themselves to no penalty or liability.

It is a general rule that in summary proceedings in mandamus, courts refuse to determine as to the constitutionality of statutes affecting the rights of third parties, and grave questions of this character may not be raised by ministerial officers, whose duty it is to carry out statutory directions: *Ames* v. *People,* 26 Colo. 81; *High on Extr. Remedies* 143; *People* v. *Salomon,* 54 Ill. 39; *State ex rel.* v. *Hagood,* 30 S. C. 519; *People ex rel.* v. *Collins,* 7 Johnston 549; *Tremont School District* v. *Clark,* 33 Me. 482; *Smith* v. *Titcomb,* 31 Me. 272, 286; See also monographic notes; *State* v. *Heard,* 47 L. R. A. 512; *Wiles* v. *Williams,* 34 L. R. A. (N. S.), 1060.

The board of supervisors in this proceeding cannot raise the point that the act is violative of the due process of law, or equal protection clauses of the state or Federal Constitution; they do not belong to that class for whose sake the constitutional protection is

given, or the class primarily protected, and courts do not pass upon the constitutionality of statutes at the instance of parties not in a position to question them: *Quinn* v. *State,* 82 Miss. 75; *Coleman* v. *Carr* (W), 258; *De Jarnette* v. *Hayes,* 23 Miss. 600; *Harmon* v. *Bartow,* 23 Miss. 273; *Railroad Co.* v. *Crawford,* 96 Miss. 697; *Adams* v. *Capital State Bank,* 74 Miss. 307; *Hendrix* v. *State,* 79 Miss. 368; *Grenada County* v. *State,* 98 Miss. 536; *Bell* v. *Kerr,* 80 Miss. 177; *Lumber Co.* v. *Harrison Co.,* 89 Miss. 171; *Flora* v. *Express Co.,* 92 Miss. 66; *Y. & M. V. R. R. Co.* v. *Vinegar Co.,* 226 U. S. 217; *Hatch* v. *Reardon,* 204 U. S. 153; *Lee* v. *State,* 207 U. S. 67; *Stock Food Co.* v. *Wright,* 225 U. S. 540; *So. Railway Co.* v. *King,* 217 U. S. 525; *McKay* v. *Railway Co.,* 235 U. S. 151; *Hendricks* v. *Maryland,* 235 U. S. 610.

If, however, the constitutional questions are to be considered, the question arises whether the legislature is competent to execute the constitutional mandate of equality and uniformity in taxation, and to require property to be assessed at its true value.

While the Constitution requires property in every county to be assessed at its true value, it is a matter of common knowledge that in practice this has been accomplished in name and not in fact.

Heretofore, the legislature has undertaken to execute the constitutional mandate by providing that the various boards of supervisors should equalize the valuations returned by the county assessors, but this scheme was found to fall far short of executing the constitutional requirement of equality in taxation and assessments at true value. The present scheme was devised to carry out the constitutional rule of equality, between all the people in all the counties and the requirement that property be assessed at its true value. Before it can be said that this statute is unconstitutional, counsel for appellees must point out some inhibition against the

exercise of the power and duty expressly enjoined by section 112 of the Constitution.

The general rule is that when a Constitution confers a power or enjoins a duty, it always confers by implication the power necessary for the exercise of the one or the performance of the other, unless some clear restriction is imposed by the Constitution; 6 Enc. Law 928 and note 4.

There are no express or clear limitations in the Constitution restraining the legislature in the exercise of its sovereign and necessary power of taxation, except section 112 of the Constitution. Therefore, the state has plenary power, subject to the limitations contained in section 112. *State ex rel.* v. *Nichols,* 29 Wis. 159; *State* v. *Myers,* 52 Wis. 628; *State* v. *Thorne,* 112 Wis. 81; *Foster* v. *Rowe,* 128 Wis. 326; *State* v. *Daniels,* 143 Wis. 649; *Tax Commission* v. *Pitcher,* 56 Colo. 343; *Van De-Grief* v. *Haynie,* 28 Ark. 270; *Hacker* v. *Howe* (Neb.), 101 N. W. 255; *State* v. *Thomas,* 16 N. W. 86.

The act is not void because the state tax commission has authority to equalize personalty valuations without equalizing real estate valuations. *Railroad Co.* v. *Adams,* 77 Miss. 764; *State* v. *Myers,* 52 Wis. 628; *Timothy* v. *Bank,* 10 N. M. 283.

The act is not unconstitutional because it interferes with the constitutional duties of county assessors, and boards of supervisors. Section 170 of the Constitution does not confer any power on the board of supervisors, except full jurisdiction over roads, ferries and bridges, and no other section defines their power. Supervisors are not common law officers, and possess only such powers as are conferred by the Constitution, or the laws made in pursuance of it.

Sections 135 and 138 of the Constitution do not confer any express or exclusive powers upon tax assessors. It is well established in this state that the legislature has the power to enlarge or restrain the duties of constitutional officers. *Magee* v. *Brister,* 109 Miss. 183;

*Fidelity & Deposit Co.* v. *Wilkinson County,* 109 Miss. 873.

The Constitution nowhere makes the judgment of the assessor final. Heretofore the valuations returned by the assessors have either been increased or decreased by the board of supervisors under statutory authority, and it was not thought that this was an infringement upon the assessors' prerogatives. It has been frequently held that legislation authorizing the tax collector to assess and collect taxes, and boards of supervisors to appoint another assessor, to make new assessments, was not an infringement upon the constitutional duties of county assessors. *Tonella* v. *State,* 78 Miss. 731; *State* v. *Tunica County,* 78 Miss. 294; *Power* v. *Magee,* 81 Miss. 229.

The Tonella and Mangum cases are not authorities against the constitutionality of this act. The question involved in the Tonella case was whether the legislature had power to ignore the constitutional requirement of equality and uniformity in taxation under general laws, and to confer upon the revenue agent the power of avoiding all judgments of the board of supervisors in approving the assessment roll. The Mangum case involved the power of the legislature to dispense with the constitutional requirement, that property be assessed according to its true value, and authorizing assessments upon an arbitrary basis without regard to actual value.

The present act executes section 112 of the Constitution and does not disregard it as did the acts under review in the Tonella and Mangum cases.

The act is not unconstitutional, because the individual taxpayer is given no notice of the meeting of the state tax commission, nor afforded an opportunity to be heard; nor does it deprive the taxpayer of his property without due process of law, nor deny him the equal protection of the law. As the tax commission deals with the different counties of the state and with the different classes of property, and not with the indi-

vidual taxpayer, it is not necessary that the taxpayer have notice of the meeting of the commission, nor an opportunity to be heard before it. *Foster* v. *Rowe,* 128 Wis. 326; *Carrico* v. *Croker,* 38 Okla. 443; *Porter* v. *Railroad Co.,* 76 Ill. 598; *Territory* v. *First Nat'l Bank,* 10 N. M. 283; *Railroad Tax Cases,* 92 U. S. 575; *Hacker* v. *Howe* (Nebr.), 101 N. W. 255; *Tax Commission* v. *Pitcher,* 56 Colo. 374.

Laws for the assessment and collection of general taxes stand upon a different footing from eminent domain proceeding, or laws for the imposition of special taxes and "are construed with the utmost liberality; sometimes even to the extent of holding that no notice whatever is necessary." *Turpin* v. *Lemon,* 187 U. S. 51.

The *Bi-Metallic Company* v. *State Board of Equalization case* is the last and final pronouncement of the supreme court of the United States upon the question under discussion. In that case the Colorado act creating the state tax commission was attacked because the Bi-Metallic Company "was given no opportunity to be heard." The statute did provide a time of meeting for the tax commission, but did not provide for, nor did it contemplate that the individual taxpayer could be heard.

The Commission increased the value of all taxable property in the city of Denver forty per cent. The increase was attacked in the state court and the order upheld. The supreme court in affirming the case, expressly held that the act was not unconstitutional, because the plaintiff was not afforded an opportunity to be heard, and said "that where a rule of conduct applies to more than a few people, it is impracticable for everyone to have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meetings, or an assembly of the whole. . . . In considering this case in this court, we must assume that the proper state machinery has been used; and the question is whether if the State Constitution had de-

clared that Denver had been undervalued as appeared and had decreed that for the current year the valuation should be forty per cent. higher, the objection urged could prevail. It appears to us to put the question is to answer it. There must be a limit to individual argument in such matters, if government is to go on.''

However, the act under review affords the taxpayer ample opportunity to be heard. He has the same rights and remedies under the law as he had before the passage of the act. He may prosecute an appeal under section 81 of the Code of 1906, and has his remedy under section 91, in appropriate cases. *Railroad Co.* v. *Adams,* 85 Miss. 772; *Briscoe* v. *McMillian,* 115 Tenn. 1115. If the increase results in an over valuation, the taxpayer may maintain an injunction. *Jones* v. *Renfro,* 7 Okla. 198.

Moreover the act contains a specific provision for representation by the taxpayer before the commission. The state tax commission does not act upon the individual's assessment, but upon the county and the several classes of property in the county. The act provides that before an order shall become final, it shall be certified to the president of the board of supervisors, and a special meeting called, and if the board is dissatisfied with the increase ordered, it may appear with witnesses before the state tax commission and object. Thus, the supervisors are made the representatives of all the taxpayers of the county. The doctrine of representation is no new or peculiar doctrine. It is the universal rule that if parties in interest are too numerous to be made parties by name to a proceeding, that some representative may act for the entire body under the doctrine of "representation." 15 Ency. Pl. & Pr., 627; *Suydam* v. *Merrick Co.,* 19 Neb. 1551.

A case which seems conclusive of the constitutionality of the act under review with regard to the point now under discussion is *Ray* v. *Armstrong,* 140 Ky. 800. The Kentucky act was almost identical with the present

act in the particulars mentioned. It was there held that such representation cut off all objection as to the lack of notice to the individual taxpayer.

There are many cases upholding the constitutionality of similar acts in various states, under constitutional provisions similar to ours. We desire to call the court's attention to a few of the leading cases. *People* v. *Solomon,* 46 Ill. 333; *State ex rel.* v. *Daniel,* 143 Wis. 649; *Tax Commission* v. *Pitcher,* 56 Colo. 343; *State* v. *Myers,* 52 Wis. 628; *State* v. *Railroad Commission,* (Minn.), 141 N. W. 839; *South Springs R. & C. Co.* v. *State Board, etc.,* 139 Pac. 159; *Foster* v. *Rowe,* 128 Wis. 326; *Hacker* v. *Howe,* 101 N. W. 255; *Wallace* v. *Butler,* 6 Okla. 17-757; *Carrico* v. *Croker,* 35 Okla. 440; *Salt Lake* v. *Armstrong,* 16 Utah, 423; *Block* v. *McCorkle,* 103 Mo. 193.

The only case where a similar scheme has been condemned is *Houston* v. *Austin,* 47 Cal. 646. This scheme was condemned because of the peculiar constitutional provisions of that state.

The order was not void because the commission increased the total valuation of the personalty within the state. The act expressly authorizes the commission to "ad a fixed per centum to the assessed valuation of any class of property in any county, if they find that the valuation is too low." The authorities almost without dissent uphold the power of state equalization boards, under statutes substantially similar to this statute, to take the valuation in one county as a basis and increase or decrease the valuations in all the other counties to the same basis, though the effect is to increase the total valuations in the state. *Cooper Queen Mining Co.* v. *Territory,* 9 Ariz. 363; *Wallace* v. *Butler,* 6 Okla. 17—757; *Jones* v. *Ruffin,* 7 Okla. 198; *Rumph* v. *Jones,* 38 Okla. 30; *State* v. *Thomas,* 16 N. W. 86; *Salt Lake* v. *Armstrong,* 16 Utah, 473; *State* v. *Nichols,* 29 Wis. 159; *Block* v. *McCorkle,* 103 Mo. 193; *Territory* v. *Bank,* 10

N. M. 283; *South Springs R. & C. Co.* v. *Board, etc.,* 139 Pac. 159.

The purpose of the act was to keep the local authorities from placing a low valuation upon the taxable property and thus deprive the state of its just revenue. If the total valuations cannot be increased, by the Tax Commission, the purpose for which the act was passed fails. Without such a power the local boards can continue to reduce valuations and the total revenue received by the state will not be increased.

*Percy & Percy,* for appellee.

The personal assessment roll of Washington county, for the year 1916, was duly filed with the board of supervisors of that county and approved by the board at its August meeting, 1916, and thereafter the roll was sent to the auditor, who turned it over to the state tax commission, which commission directed certain changes to be made in it, increasing valuations of specified classes of property from twenty per cent to one hundred per cent. The roll was returned to the board of supervisors on October 19, 1916, and the clerk thereupon gave notice of a special meeting of the board, which meeting was held on October 24, and at this meeting the board passed an order that the assessment of personal property as shown on the roll and approved at the August meeting was a fair and equitable assessment of such property and that its approval of said roll at said meeting was final, and ordered that the roll as approved at the August meeting stand as the assessment of personal property in the county. The board appointed witnesses to appear before the state tax commission and request the commission to withdraw its order. This the state tax commission refused to do, and returned the roll to the board, and thereafter, at a meeting held on the 6th day of November, 1916, the board again approved the original roll, and refused

to make the changes. The district attorney, on behalf of the state, then filed this bill in the circuit court of Washington county, asking that a writ of mandamus issue,. directed to the board of supervisors of Washington county, commanding them to. make the changes in the personal assessment roll ordered by the state tax commission. To this petition the board of supervisors filed a demurrer, which was sustained by the circuit judge, and from this judgment this appeal is prosecuted. The demurrer is as follows:

Now comes the defendants, George Wheatley, L. J. Parnell, J. C. Hutson, C. C. Dean and J. F. Dinkins, by their attorneys, and demur to the petition of the relator herein, and pray the judgment of this court whether they shall make further answer thereto, and for grounds of demurrer would show:

1. The said act of the legislature under which the said state tax commission was created, and under which the said tax commission derives its authority to act is invalid in that it permits the state tax commission to equalize and raise the assessment of personal property without regard. to the valuation and assessment of real property.

2. Because the act of the legislature creating the state tax commission, being chapter 98, Laws of 1916, requires these defendants to follow the instructions of the state tax commission in the assessment and valuation of property without affording to the owner of such property an opportunity to be heard as to the amount at which such property is to be assessed and valued for assessments or at which such property is assessed and valued for assessment, which is repugnant to the provisions of the Constitution of the state of Mississippi and the provisions of the Constitution of the United States that no person shall be deprived of property without due process of law, and is therefore void.

3. Because the act of the legislature creating the state tax commission, being chapter 98, Laws 1916, requires these defendants to follow the instructions of the state tax commission in the assessment and valuation of property, without giving to the owner of such property any notice of a hearing on the amount at which such property is to be assessed and valued for assessment, or at which such property is assessed and valued for assessment, which is repugnant to the provisions of the Constitution of the state of Mississippi and the provisions of the Constitution of the United States that no person shall be deprived of property without due process of law, and is therefore void.

4. Because the act of the legislature creating the state tax commission, being chapter 98, Laws 1916, requires these defendants to follow the instructions of the state tax commission in the assessment and valuation of the property without giving to the owner of such property a reasonable notice of a hearing on the amount at which such property is to be assessed and valued for assessment, or at which such property is assessed and valued for assessment, which is repugnant to the provisions of the Constitution of the state of Mississippi and the provisions of the Constitution of the United States that no person shall be deprived of property without due process of law, and is therefore void.

5. The said act of the legislature, being chapter 98, Laws 1916, is invalid in that it authorizes and permits and directs the state tax commission to act on the property of the taxpayers listed on the assessment roll, without giving notice to or affording an opportunity for a hearing before the said state tax commission, which is repugnant to the provisions of the Constitution of the state of Mississippi and the provisions of the Constitution of the United States that no person shall be deprived of property without due process of law, and is therefore void.

6. Because the said act of the state tax commission and its orders and directions are void, because they equalize and raise the assessment of personal property to a higher valuation of assessment than other property, to wit: real property, and the said orders and directions of the state tax commission in equalizing and raising the assessment and valuation of real property, and assessing same on a higher basis and rate constituted a discrimination against the owners of such property, and takes their property without due process of law, in violation and contravention of the provisions of the Constitution of the state of Mississippi and the Constitution of the United States.

7. Under the Constitution of the state of Mississippi the valuation and assessment of property within the counties is intrusted to the tax assessors of the various counties subject to the power of the boards of supervisors to equalize and approve the assessment rolls, and the act under which the state tax commission is acting takes such assessments out of the hands of the assessors and of the boards of supervisors, and such act is therefore unconstitutional and void.

8. Because the act of the board of supervisors of Washington county in approving the assessment of personal property in the said county at its August meeting, 1916, was final and conclusive and not subject to change or modification.

9. Because the said act attempts to vest the state tax commission with the power to review the findings of the board of supervisors at the August, 1916, meeting, thereby vesting the said state tax commission with judicial powers, in violation of the Constitution of the state of Mississippi.

10. Because in the equalization and approving, correcting and modifying the assessments of the various classes and items of property shown on said roll, these defendants act in a *quasi*-judicial capacity, and the matter of the amount of the assessments of the various

species of property listed and valued on said assess-
ment roll is a matter to be decided by them, that it lies
within the discretion of these defendants, acting as the
board of supervisors of said Washington county, to
decide as to the amount to be assessed and that their
discretion in this particular cannot be controlled by
mandamus.

11.   The petition herein shows that the total amount
of the assessments of all the personal property in the
state of Mississippi appearing on the assessment rolls
as shown by the rolls sent to the auditor of public
accounts and considered by the state tax commission,
was ninety-five million, one hundred twenty-four thou-
sand, one hundred ninety-seven dollars, and that the said
state tax commission, by its orders and directions in-
creased said assessment of said personal property in the
sum of eight million, eight hundred forty-three thousand,
three hundred nineteen dollars, and defendants aver that
the orders and directions of the state tax commission are
void because said state tax commission did not act as a
board of equalization in accordance with the act creating
same, and did not equalize the various classes of personal
property or the total personal property appearing on
said rolls, but acted as a board of assessors and raised
the valuation of the personal property listed on said
assessment rolls, in violation of said chapter .98, Laws
1916.

12.   And for other causes to be assigned to the hear-
ing of this demurrer.

The question as to the unconstitutionality of chapter
98, Laws of 1916, creating the state tax commission is
properly raised by the board of supervisors in this pro-
ceeding.  *Huntington* v. *Worthen,* 120 U. S. 97, 30 L.
Ed. 588; *State of Utah ex rel. University of Utah* v.
*Candland,* 24 L. R. A. (N. S.), 1260; High on Extra-
ordinary Remedies, page 143; *People* v. *Salomon,* 54 Ill.
39; A South Carolinan case, 7 Johns, 549; *Van Horn* v.
*State,* 64 N. W. 371; *Marbury* v. *Madison,* 1 Cranch,

137; *Thoreson* v. *State Examiners,* 19 Utah, 30-31; 57 Pac. 175, and 21 Utah, 187, 60 Pac. 982; *State ex rel. Wright* v. *Standford,* 24 Utah, 163, 66 Pac. 1061; *State ex rel. Cutler Davis* v. *Cutler,* 34 Utah, 99, 107, 95 Pac. 1071, 1074; *People ex rel. Atty.-Gen.* v. *Salomon,* 54 Ill. 39; *School District* v. *Clark,* 33 Me. 482; *State ex rel. Lytle* v. *Douglas County,* 18 Neb. 506, 26 N. W. 315; *Maxwell* v. *Burton,* 2 Utah, 595; *People ex rel. Bradley* v. *Stephens,* 2 Abb. Pr. (N. S.), 348; *Smyth* v. *Titcomb,* 31 Me. 272; *Wright* v. *Kelly,* 4 Idaho, 624, 43 Pac. 565; and *State ex rel. Miller* v. *Buchanan,* 24 W. Va. 365, 384; *Norman* v. *Kentucky Bd. of Managers,* 93 Ky. 537, 18 L. R. A. 556, 20 S. W. 901; *McDermont* v. *Dinnie,* 6 N. D. 278, 69 N. W. 294; *Denman* v. *Broderick,* 111 Cal. 97, 43 Pac. 516; *Brandenstein* v. *Hoke,* 101 Cal. 131, 35 Pac. 562; *Norton* v. *Shelby County,* 118 U. S. 442, 30 L. Ed. 186, 6 Sup. Ct. Rep. 1125.

It can scarcely be contended that the effect of chapter 98, Laws of 1916, made by the board of supervisors so subordinate to the state tax commission that it no longer was responsible for its own acts, especially in view of the provisions of that act intrusting to the board the responsibility of protesting or not protesting against the changes made by the state tax commission. To quote the language in the case above:

"In this case we think the defendant board directly represents the public—the taxpayers. In our judgment, therefore, it was their duty to refuse to act if in their judgment the law which directed the act is void. If such is not their duty, then they owe no duty to the people whose servants they are."

Without burdening the court by quoting from the opinions, the same position was taken in the following cases: *Daniels* v. *Long,* 111 Mich. 562, 69 N. W. 1112; *People* v. *Allen,* 162 N. H. 651, 57 N. E. 1122; *McDermont* v. *Dinnie,* 6 N. D. 278, 69 N. W. 294; *Commonwealth* v. *Mathues,* 210 Pa. 385, 59 Atl. 961; *Commonwealth* v. *State Treasurer,* 29 Pa. Cir. Ct., 556; 2 Bailey

on Mandamus, citing *Brown* v. *State Board, etc.,* 5 Idaho, 589, 51 Pac. 417; *State ex rel.* v. *Tappan,* 29 Wis. 664, 9 Am. Rep. 622; *Denman* v. *Broderick,* 111 Cal. 97, 43 Pac. 516; *Maynard* v. *Board of Canvassers* (Mich.), 47 N. W. 756; *State Auditor* v. *Kentucky Board of Managers, etc.,* 20 S. W. 901; *Denman* v. *Broderick,* 43 Pac. 516; *McDermont* v. *Dinnie,* 69 N. W. 294; *State* v. *Getchell,* 3 N. D. 243, 55 N. W. 585; *Brandenstein* v. *Hoke,* 35 Pac. 562.

These seem to cover all of the cases in which this point was presented to and passed upon by the court, but there are a great number of cases in which the unconstitutionality of the law was raised by ministerial officers, and passed upon by the court, in some cases the law being held constitutional, and in some otherwise; the right of the officer to question the law not being raised. *People* v. *Chenago Suprs.,* 8 N. Y. 317; *State* v. *Stout,* 61 Ind. 143; *State* v. *Meadows,* 1 Kan. 90; *Williams* v. *Taylor,* 83 Tex. 670, 19 S. W. 159; *Morton* v. *Comptroller General,* 4 S. C. (N. S.), 430; *State* v. *McKinney,* 5 Nev. 194; *Public School Comrs.* v. *Allegany County Comrs.,* 20 Md. 449; *People* v. *Miner,* 46 Ill. 384; *State* v. *Sauk County Suprs.,* 62 Wis. 376, 22 N. W. 572; *People* v. *Batchellor,* 53 N. W. 128, 13 Am. Rep. 480; *Citizens' Bank* v. *Wright,* 6 Ohio Ct. 318; *Humboldt County* v. *Churchill County Comrs.,* 6 Nev. 30; *State* v. *Harris,* 17 Ohio St., 608; *Cincinnati W. & Z. Rd.* v. *Clinton County Comrs.,* 1 Ohio St. 77; *State* v. *Baltimore County Comrs.,* 29 Md. 516; *State* v. *Warren County Comrs.,* 17 Ohio St. 558; *State* v. *Mitchell,* 31 Ohio St. 592; *State* v. *Whiteside,* 30 S. C. 579, 3 L. R. A. 777, 9 S. W. 661; *State* v. *Whitworth,* 8 Lea, 594; *Madison County Ct.* v. *People,* 58 Ill. 456; *Police Comrs.* v. *Louisville,* 3 Bush. 597; *People* v. *Kelly,* 5 Abb. N. C. 383; *Tennessee, etc., Rd. Co.* v. *Moore,* 36 Ala. 371; *Stevenson* v. *Colgan,* 91 Cal. 649, 14 L. R. A. 459; *Rankin* v. *Colgan,* 92 Cal. 605, 28 Pac. 673.

This court has recognized the wisdom of passing upon the validity of a law in a test case, even where it was unnecessary for the disposition of the instant case. *State ex rel., Collins* v. *Jones,* 106 Miss. 522.

The act is unconstitutional because, under the Constitution of the state of Mississippi, as construed by the supreme court of the state, the valuation and assessment of property within the counties intrusted to the tax assessors of the various counties, subject to the powers of the board of supervisors to equalize and approve the assessment rolls, and the act creating the state tax commission is violative of this constitutional scheme. *French* v. *State,* 52 Miss. 759; *State* v. *Tonella,* 70 Miss. 701; *Hawkins* v. *Mangum,* 78 Miss. 97; *Houghton* v. *Austin,* 47 Cal. 646; *People* v. *Sargeant,* 44 Cal. 430; *People* v. *Haslings,* 29 Cal. 430; *In re House Bill,* 270, 67 Pac. 62; *State ex rel., Wallace* v. *State Board of Equalization,* 46 Pac. 266, 8 Pac. Law Journal 103; *Poe* v. *Howell,* 67 Pac. 62.

Chapter 98, Laws of 1916, is unconstitutional, because the owner of property is given no notice and afforded no hearing as to the changes in the assessment of his property. *Western Union Telegraph Co.* v. *Kennedy,* 69 So. 674; *Noxubee County* v. *Adams,* 3 So. 37; *Railroad Company* v. *Adams,* 85 Miss. 772; *Londoner* v. *Denver,* 52 Law Ed. 1103-12; *Winona & St. Peter Land Company* v. *Winona, etc., Land Co. of Minnesota,* 48 Law Ed. 247-51; *Hagar* v. *Reclamation District,* 28 Law Ed. 569; *Stuart* v. *Palmer,* 30 Am. Rep. 289; Trustees of New York Prot. *Epis Public School,* 31 N. Y. 574; *Overing* v. *Foote,* 65 N. Y. 263; *Trumbull* v. *Palmer,* 93 N. Y. Sup. 349; *Ferry* v. *Campbell,* 50 L. R. A. 92; *Gatch* v. *Des Moines,* 63 Iowa, 718, 18 N. W. 310; *County of Santa Clara* v. *Southern Pacific Railroad,* 18 Fed. 385, 8 Saw, 288, 13 Fed. Rep. 762, 783; *People* v. *Essex County,* 70 N. Y. 229; *Gilmore* v. *Sapp,* 100 Ill. 297; *Railroad Tax Cases,* 13 Fed. 765; *Philadelphia* v. *Miller,* 49 Pa. St. 448; *Overing* v. *Foote,* 65 N. Y. 263; *Wester-*

*velt* v. *Gregg,* 12 N. Y. 209; *Butler* v. *Saginaw County,* 26 Mich. 29; *Davidson* v. *New Orleans,* 96 U. S. 97; *Butler* v. *Saginaw County,* 26 Mich. 22; *Cleghorn* v. *Postlewaite,* 43 Ill. 428; *Philadelphia* v. *Miller,* 49 Pa. St. 448; *Marsh* v. *Chestnut,* 14 Ill. 223; *Billings* v. *Detton,* 15 Ill. 218; *Sioux City, etc., R. Co.* v. *Washington Co.,* 3 Neb. 30; *Lott* v. *Hubbard,* 44 Ala. 593; *Winnisimmet Co.* v. *Chelsea,* 6 Cush. 477; *Lincoln* v. *Worchester,* 8 Cush. 55; *Porter* v. *Co. Comrs.,* 5 Gray, 509; *Sharp* v. *Apgar,* 31 N. J. Law, 358; *Young* v. *Parker,* 33 N. J. Law, 192; *Patten* v. *Green,* 13 Cal. 329; *Cleghorn* v. *Postlewaite,* 43 Ill. 428; *Matter of Smith,* 52 N. Y. 526; *Moulton* v. *Blaisdell,* 24 Me. 283; *Lagroue* v. *Rains,* 48 Mo. 536; *Dool* v. *Cassopolis,* 4 N. W. 265; *Griffith* v. *Watson,* 19 Kan. 27; *Leavenworth Co.* v. *Lang,* 8 Kan. 284; *Kansas Pac. R.* v. *Russel,* id. 564; *Same* v. *Wyandotte Co.,* 16 Kan. 587; *Relfe* v. *Columbia L. Ins. Co.,* 11 Mo. App. 374; *Pacific R. Co.* v. *Cass Co.,* 53 Mo. 30; *San Mateo* v. *Southern Pac. Rd. Co.,* 13 Fed. 722; *Mulligan* v. *Skith,* 8 Pac. Law J. 499; *Patten* v. *Green,* 13 Cal. 329; *Cooper* v. *Board of Works,* 108 Eng. C. L. R. 181; Desty on Taxation, page 597; *Pickton* v. *Fargo* (1901), 10 N. D. 469, 88 N. W. 90; *Mercantile National Bank* v. *Hubbard,* 105 Fed. 809; *Coe* v. *Armour Fertilizer Works,* 59 Law. Ed. 1027; *Security Trust & S. B. Co.* v. *Lexington,* 203 U. S. 323, 51 L. Ed. 204, 208, 27 Sup. Ct. Rep. 87; *Central of Georgia R. Co.* v. *Wright,* 207 U. S. 127, 128, 52 L. Ed. 134, 141, 28 Sup. Ct. Rep. 47; *Roller* v. *Holly,* 176 U. S. 298, 409, 44 L. Ed. 520, 524; *Louisville & N. R. Co.* v. *Central Stock Yards Co.,* 212 U. S. 132, 144, 53 L. Ed. 441, 446, 29 Sup. Ct. Rep. 246; *Sioux City & Pac. Rd. Co.* v. *Washington County,* 3 Neb. 30; Cooley on Taxation, pages 265-6-7-8; *Avant* v. *Flynn* (So. Dakota), 49 N. W. 15; *Patten* v. *Green,* 13 Cal. 328; *Hancock County* v. *Simmons,* 86 Miss. 302-13.

The eleventh ground assigned in the demurrer reads as follows: "The petition herein shows that the total amount of the assessments of all the personal property

in the state of Mississippi appearing on the assessment roll as shown by the rolls sent to the auditor of public accounts and considered by the state tax commission, by its orders and directions increased said assessment of said personal property in the sum of eight million, eight hundred forty-three thousand, three hundred nineteen dollars, and defendants aver that the orders and directions of the state tax commission are void because said state tax commission, by its orders and directions increased said assessment of said personal property in the sum of eight million, eight hundred forty-three thousand, three hundred nineteen dollars, and defendants aver that the orders and directions of the state tax commission are void because said state tax commission did not act as a board of equalization in accordance with the act creating same, and did not equalize the various classes of personal property or the total personal property appearing on said rolls, but acted as a board of assessors and raised the valuation of the personal property listed in said assessment rolls, in violation of said chapter 98, Laws 1916.''

This ground of demurrer rests, not upon the unconstitutionality of the law, but on the ground that the tax commission has failed to conform to the law which created it. *Kittle* v. *Shervin,* 11 Neb. 78; Desty on Taxation, page 496; *State ex rel. Wallace* v. *State Board of Equalization,* 46 Pac. 266; *People* v. *Lathrop,* 3 Col. 428; *Wells Fargo & Co.* v. *State Board of Equalization,* 56 Cal. 194; *Lead Co.* v. *Simms,* 108 Mo. 222, 18 S. W. 906; *Poe* v. *Howell,* 67 Pac. 62; *U. S.* v. *Wigglesworth,* 2 Story 369, Fed. Case, No. 16, 690; *Kittle* v. *Shervin,* 11 Neb. 78; *State* v. *State Board of Equalization,* 46 Pac. 266; *Block* v. *Burdick,* 1 Hill, 130, 37 Am. Dec. 299.

The crudity of the Mississippi statute, its abrogation of the taxpayers' constitutional safeguards, its failure to provide any mode of procedure for the commission, the very vastness of the power conferred by it, has led

the commission into the belief that there is no limitation upon its power to deal with the property of the entire state for purposes of taxation. But even this statute makes of the commission a board of assessment only within the limits of the valuation placed upon the property by the county assessors. Surely no reason can be found for the court to extend the power of the commission beyond what is sought to be conferred upon it by the statute.

STEVENS, J., delivered the opinion of the court.

(After stating the facts as above). It is agreed that section 112 of our Constitution provides the general standard for the assessment of property for taxation, and for the collection of *ad valorem* taxes. It furnishes the ideal rule by which the rights of taxpayers are to be measured—the guiding star for the lawmaker and every officer charged with the duty of assessing and valuing property for taxation. But the goal towards which our state has been striving has never yet been fully attained. The key words of our Constitution are "uniform," "equal," "true value," and to accomplish results, "general laws." While property in every county is to be assessed at true value, it is a matter of common knowledge and comment that in practice this has been accomplished in name, and not in fact. The Constitution provides for a county assessor, fixes his term of office, and contemplates that this officer shall list and value all taxable property in his county. Experience for a long time indicates that the assessor generally places upon his roll unchanged the various valuations fixed by the property owner himself. The power to equalize assessments has heretofore been conferred upon the boards of supervisors, but experience further demonstrates that there are as many different standards of values in the state as there are separate boards of supervisors. The uniform rate of state tax

must be applied to the unequal and varying valuations over the many counties of our commonwealth. Valuations of the same class of property has varied in adjoining counties without any real or substantial reason for the difference. It follows that heretofore one county has been contributing to the state more revenue than many other counties with the same amount of taxable property. The burden has been unequally distributed. This is the known mischief which chapter 98, Laws 1916, has undertaken to remedy. This law was intended to be a step forward toward the ideal system contemplated by our organic law. Its purpose is to accomplish the very uniformity and equality demanded by the Constitution. The question whether it is a practical scheme or embodies the best wisdom on this subject is of little concern to the court. All we are called upon to determine is whether the act is obnoxious to any of the provisions either of our state or federal Constitution.

But first, can the constitutional questions be raised by appellees as they undertook to do and successfully so in the lower court? Without entering into a prolonged discussion of this subject, about which the authorities are not fully in accord, we prefer to hold in the present case that the questions were properly raised by appellees, and that the court should take cognizance of their complaints. The members of the boards of supervisors hold their office by virtue of the Constitution itself. They have imposed upon them large and important duties and responsibilities; in meeting assembled they constitute an inferior tribunal. It is their duty to approve in the first instance the assessment rolls. If there is no objection, their approval is final. Before the enactment of chapter 98, Laws 1916, their final authority to approve the assessment rolls was unchallenged. While any individual taxpayer had the right of appeal, the order of the board of supervisors approving the roll was not subject to review. In ap-

proving the roll they have heretofore acted as officials, and not as subordinates. When, therefore, the order of the state board directed them to make far-reaching corrections in a roll which they had already approved and submitted to the auditor and the approval of which would be final but for the new statute here under review, the members of the board would naturally be confronted with the question of the validity or invalidity of the order they are directed to obey. If the new law is unconstitutional their corrections would be a nullity, and if a nullity the corrections, if made, would plunge into chaos the revenue system of Washington county. It is a question in which the public has a direct interest. If the statute of 1916 is unconstitutional, any compliance with the order of the state board would be an unconstitutional act, and appellees would in that instance disobey the very Constitution which they have sworn to uphold and obey. We hold, therefore, that the constitutional questions are properly before us.

In the consideration of the merits of this case, it is of course the duty of the court, if possible, to uphold and not destroy the statute. In approaching then the legal questions argued, we do so with sympathetic regard for the work of the lawmaking department of our government.

There is no merit in the contention that the statute is invalid because it permits the state tax commission to equalize and raise the assessment of personal property without regard to the valuation and assessment of real property. The act itself provides no new standard of assessments. The object of the new law is to assess all property at its true value to the end that all taxable property shall bear its just proportion of the burdens. The general constitutional scheme is binding on assessors, boards of supervisors, and the courts. It is equally binding upon the state tax commission. The fact that in the year 1916 the state board was confronted with the work of equalizing assessments of

personalty and not realty affords no ground for complaint. The land assessment rolls were not and could not then be presented for consideration. The land rolls of Washington county effective for the year 1916 are conclusively presumed to be correct. The time for the approval of a new assessment of lands has not arrived, and there is here presented no contention that the state board of tax commissioners has ordered an unlawful increase in the assessment of realty, or has taken any action affecting the rights of landowners.

The second, third, fourth, fifth, and sixth grounds of the demurrer challenge the constitutionality of the statute upon the ground that a compliance by the board of supervisors with the order of the state tax commissioners would deprive the individual taxpayer affected by the order of his property without due process of law in this, that the act under review does not provide for notice to be given the taxpayer of the proposed increase, does not afford an opportunity to be heard, and that it does not afford redress against an excessive or unconstitutional valuation. Counsel for the state meet this criticism of the statute by the assertion and argument that, so far as any correction ordered by the board of state tax commissioners is concerned, no notice is required.

Counsel do argue that the aggrieved taxpayer in any particular case has his remedy either under section 91 of the Code relating to *certiorari,* or by an injunction to restrain the tax collector from collecting taxes upon an excessive or unlawful valuation. They argue further that the individual taxpayers are represented before the state tax commissioners by their representatives, to wit, the members of the board of supervisors. In contending that no notice whatever is required counsel for the state rely upon the case of *Bi-Metallic Co.* v. *State Board of Equalization et al.,* 239 U. S. 441, 36 Sup. Ct. 141, 60 L. Ed. 372. But in our judgment the express terms of the statute itself dispose of this criticism and

the attack based upon the due process clause of our state and federal Constitution. In the first place section 5 of the act, in conferring authority to adjust and equalize as between counties, expressly says:

"And to that end may add a fixed per centum to the assessed valuation of any class of property in any county, if they find that the valuation· was too low: Provided, such raise shall not exceed the actual valuation of the property in any case," etc.

Section 6 of the act then provides as follows:

"Upon the giving of such notice by the chairman of the board of state tax commissioners of changes or corrections to be made in the county tax rolls, it shall be the duty of the president of the board of supervisors of the county affected to call a meeting immediately of said board of supervisors, after giving five days' notice by posting at the courthouse or publishing in a newspaper of the county, and at the said meeting the said board shall correct the county valuation upon the class or classes of property specified by the board of state tax commissioners, so as to make the same conform to the findings of the said board of state tax commissioners by applying uniformly to the specified class or classes of property the fixed increase or of decrease specified by the said board of state tax commissioners, and by raising or lowering all the individuals' returns of all the taxpayers of the county upon the specified class or classes of property accordingly."

This section is subject to two interpretations so far as the rights of the individual taxpayer are concerned. By one construction it would become the duty of the board of supervisors to increase the assessment of every taxpayer in the class of property ordered to be increased and to place the same percentage of increase upon every taxpayer affected. If this is the imperative duty of the board, then the honest taxpayer whose property has been assessed at true value would be called upon to pay taxes upon an excessive and unlawful

increase. If his property has been given in at market price or true value, a price at which perhaps he would be willing to sell, then any additional burden of increase in assessment upon such an individual would be in the face of the Constitution and would violate the very uniformity and equality contemplated both by the Constitution and the very statute here under attack. Such an individual should have a right to protest and a remedy provided for by the law. The statute could be construed as requiring the board of supervisors to raise every individual a like amount without giving them either the right to be heard or any remedy. There is another construction, however, to be placed upon the language of the act, and according to this construction the rights of the individual taxpayer would be noticed and safe-guarded. Section 6 does provide that the meeting of the board of supervisors is to be held upon notice; this notice is a general notice by publication and for the benefit of the public generally. By this notice every taxpayer is advised of the meeting and has a right to attend; by the terms of this section the board of supervisors are not directed to increase every individual taxpayer and fix an arbitrary percentage, but distributes the burden of increase amongst the individual taxpayers within the class of property affected by the order. In raising this class of property they are directed by the state board to increase not the assessment of any particular individual, but the total assessed valuation of that class of property. In accomplishing this increase of total valuation, the board of supervisors are accorded the absolute right to distribute the burden of increase uniformly amongst the taxpayers of that class. The section of the act makes use of the word "uniformly;" we regard the use of this term here in the sense in which the Constitution itself used the word "uniform." To illustrate, then: If honest Richard Roe originally gave in his assessment at the top market price—at constitutional

true value— and the state board has ordered an increase by which he is to be affected, honest Richard has a right to appear at this meeting of the board and object to the increase so far as he is concerned. In objecting, he has the right to tender evidence, if necessary, to establish his contentions. If the board should overrule his objections he then has the right, under section 81 of the Code, to appeal from the order of the board to the circuit court of his county. In the circuit court his appeal could be tried anew and a judgment according to right and justice entered. By this construction the interests of any and every individual taxpayer would be protected and an adequate remedy afforded. Section 81 of the Code is a general provision authorizing any person aggrieved by a decision of the board of supervisors "as to the assessment of taxes" to appeal. While the statute here under review is an innovation, it was certainly not the purpose of the legislature to ignore or override the individual. As to the class of property upon which the increase is ordered there is no final adjudication until the local board has complied with the order of the state board. In complying with this order the local board is not denied the right to hear the complaints of individuals, and to refuse to increase the assessment of any particular individual whose property is already assessed at actual value. This does not necessarily mean that the local board should not increase the grand total of the class. It is their duty to increase the grand total of the class in accordance with the instructions of the state board, but in making the increase to distribute the burden equitably amongst the members of that class. This construction of the statute frees it from the charge that it violates the due process clause of both the state and federal Constitutions, and renders the act in this regard constitutional.

If there are two different interpretations of a statute, one of which would render the act constitutional, and

the other unconstitutional, it is elementary that we should adopt that view and construction which would harmonize the act with the Constitution, and which would therefore uphold and not strike down the work of our law makers. It is our understanding that the interpretation which we here place upon the statute is the interpretation which the board of state tax commissioners themselves placed upon these provisions of the statute.

While the construction of the state board would not be binding upon this court, it yet remains that the construction which a department of government has placed upon the very law under which it was created and which it is sworn to enforce should be both suggestive and persuasive with the courts. By circular letter under date of October 23, 1916, the state tax commission by their general instructions says:

"It is not contemplated that any property will be assessed for more than its actual value; and, if any individual assessment would be increased beyond the actual value of the property, the increase should not be made as to it, but the grand total of the class must be increased in accordance with our instructions."

This remits the individual taxpayer to his rights and affords him his remedy. It gives him his day in court. It has often been asserted and well said that the individual was not made for the government, but the government for the individual. We shrink from any interpretation that would ignore the rights of the individual taxpayer. We cannot believe the legislature intended either to ignore or to oppress the individual. The legislature in providing that the state board shall return the assessment roll to the local board for correction indicated a purpose to leave full jurisdiction with the board of supervisors to make the increase in a way not to injure any one. If this was not the purpose, then why provide for a general notice to the public for the call meeting of the local board? This

notice is given for the benefit of the public generally. The sufficiency or reasonableness of time or notice in pursuance of which the call meeting of the local board is held is not here brought in question. .

It has uniformly been held in reference to the assessment of property for taxation that a notice by publication is a sufficient compliance with the due process clause of the Constitution. A notice by publication is the only practical or effectual notice possible. This notice the statute expressly provides. It is our judgment, therefore, that any aggrieved taxpayer would be given the right of appeal by complying with section 81 of the Code; and, this being so, it is unnecessary for us either to criticize or to adopt the views expressed by the federal supreme court in the *Bi-Metallic Case, supra.* It is also unnecessary to indicate whether the taxpayer would have any other or additional remedy either by *certiorari* or by injunction. .

The provisions of the latter half of section 6 of the act in no wise conflicts with what we have said above. This part of the section provides a method by which the board of supervisors may object to the general order of the state board and a way in which they may appear in Jackson with witnesses and present their views. If, upon hearing the objections, the protest of the board of supervisors is overruled, it then becomes the duty of the latter "to immediately revise and correct the county valuation, in the manner hereinbefore in this section contemplated and provided." It may be that some provisions of this act are drawn rather left-handedly, and may not be altogether clear. We take it, however, that if the board of supervisors instead of complying with any general order of the state board elect to protest within the fifteen days allowed by statute, they are at liberty to adjourn the call meeting and present their contentions before the state board in an effort to secure a rescission of the order or at least a modification thereof. Certain it is that if the state

board refuses to rescind the order, the local board must return to their county and make the corrections; and in doing so, it is their duty to equalize the additional increase of burden amongst the taxpayers affected by the order. This view is in absolute harmony with the general scope and purpose of the statute. The statute under review in no wise undertakes to equalize as between individuals, but exclusively between counties. At the same time it does not either expressly or by implication supersede the jurisdiction of the local board to equalize as between individuals, and nowhere does it take away the right of the individual to an appeal. The courts are open to the individual and his appeal to the court even if successful does not and will not disturb the final approval of the roll as to any and all persons who do not appeal.

Counsel for appellees have contended with learning and ability that the entire scheme here proposed undermines and supersedes our constitutional scheme of listing and valuing property by an assessor in each county, and of having the assessments equalized by the board of supervisors. Reliance is especially had upon the decision of this court in *State* v. *Tonella,* 70 Miss. 701, 14 So. 17, 22 L. R. A. 346. The issue raised by the Tonella Case was entirely different from that now presented. The statutes condemned by the Tonella Case attempted to authorize the revenue agent to sue any individual taxpayer of the state for back taxes on property which had been assessed, but in the judgment of the revenue agent had been undervalued, and on property assessed whether lawfully assessed or not. It undertook to authorize a state officer to go behind assessment rolls which had been finally approved by boards of supervisors and which by their approval had become fixed judgments as between the state and the taxpayer. The statutes there condemned substituted the one state officer for the constitutional local assessor in the original work of listing and valuing property for

assessment and taxation. Any attempt to authorize the revenue agent to ignore the previous judgments of the board of supervisors evidenced by the approved rolls, to that extent, tended to disturb vested rights, and, that too, by legislation which in effect was retroactive. Judge COOPER in his learned opinion called attention to the fact that the scheme there provided for in effect upset all the general revenue laws and the constitutional scheme, and substituted the individual discretion or judgment of one official, even to the extent of authorizing him effectually to increase one man's assessment without at the same time increasing all others whose property was undervalued. The opinion in the Tonella Case, taken as a whole and viewed in the light of the issues there presented, does not condemn the statute which we are now called upon to construe. The very object of the present law is to accomplish a correct assessment which the Tonella Case holds to be necessary. It accomplishes this purpose before, and not after, the assessment roll has been finally adopted. By the present statute the state board is constituted a higher tribunal with authority to speak before the several rolls are approved. As already indicated, the legislature must have thought that many counties were systematically undervaluing certain classes of property. The Constitution does of course provide for an assessor, fixes his term of office, and contemplates that he shall discharge the duty of listing and valuing the taxable property in his county. When he has done so, the board of supervisors have heretofore discharged the duty of equalizing as between all taxpayers of the county. While the members of the board of supervisors are provided for by the Constitution, the Constitution itself nowhere expressly provides that the board shall equalize assessments. The power to equalize is statutory. Before the act of 1916 can be struck down as unconstitutional, we must be able to point to that provision of the Constitution which expressly or by necessary implication

prohibits the legislation. No particular section of the Constitution has been called to our attention which, in our judgment, denies to the legislature the power here asserted. The power of the legislature as the immediate representatives of the people is supreme when not in conflict with the organic law. In their wisdom the legislature has provided the law in a commendable desire more nearly to accomplish uniformity and equality. It does not interfere with the work of the assessor, but leaves this official free and untrammeled in the discharge of his duties so far as his judgment goes. The Constitution nowhere makes the judgment of the assessor a finality. To do so would render the revenue laws impotent. It is conceded that the valuations placed by the assessor have heretofore been either increased or decreased by the board of supervisors, and that under a statutory power. The present law simply goes a step further and constitutes a still higher tribunal with statutory power to review, alter, and change the valuations of boards of supervisors whenever necessary to accomplish equality and uniformity as between counties. There are expressions in the opinion rendered by this court in the Tonella Case which are significant and in entire accord with the views here expressed. At one place in the opinion Judge COOPER says:

"If one rule of valuation should be adopted in one county and another in another, there would not be equality of taxation."

And again:

"It is to be remembered that in all the assessments which are reopened by the law under consideration, the boards of supervisors had been charged with the duty of examining and equalizing the rolls; and, if this was done, as must be presumed, any action by the revenue agent in changing one assessment would disturb the uniformity and equality of the burden, unless his jurisdiction may be considered as a revisory one, and his finding of the fact of undervaluation of particular prop-

erty be considered as a judicial determination that all other property appearing thereon had been assessed at its true value."

The expression "unless his jurisdiction may be considered as a revisory one" unmistakably points to the situation here presented. The state tax commission is created as a department of government with revisory power over boards of supervisors in the work of equalizing assessments between counties. In applying the leveling process as between counties it does not disturb the jurisdiction of the county boards to level or equalize between individuals. Each board has its own peculiar functions to perform. The object of each is to accomplish uniformity and equality, and to see that all property as assessed as nearly as possible at true value.

Our attention has been called to the fact that forty states of the Union have a state board of equalization similar to the one here provided. Our attention is also directed to many adjudicated cases upholding the constitutionality of these boards and to few cases condemning such statutes as unconstitutional. It would unnecessarily prolong this opinion to refer to various adjudicated cases on this subject or to criticize or approve the reasoning by the various state courts. In some of the states the Constitution expressly provides for a state board of equalization; in others the board is created by statute. There are so many differences between the Constitutions of the various states, their schemes of taxation, and the public policy as expressed both by statute and adjudicated cases, that we refrain from commenting on the various cases cited by counsel from other states. We must leave so arduous a task to the digester or writer of footnotes and confine ourselves to our own Constitution and the pronouncements of our own court. They are fully cited in the briefs, and many of them support our views.

We deem it unnecessary to discuss at length *Hawkins v. Mangum,* 78 Miss. 97, 28 So. 872. The court there

condemned the arbitrary classification of property without regard to true value. We direct attention to this specific language of the court:

"This act does not admit of taxation of 'all property in proportion to its value,' as the Constitution requires, but adjusts it according to the opinion of the assessor, not of its real value, but as to what general class it ought to be put in."

And on the suggestion of error:

"In the act under consideration there appears no legislative purpose to have an assessment for taxation according to value. On the contrary the confessed purpose is not to do so. . . . Where a thing is undertaken to be taxed, it can be taxed in no other way than according to value. The Constitution requires it, and every citizen is interested in it, so that the burden shall be equal and uniform."

The right of the boards of supervisors to increase assessments to cover improvements placed on land and the right of the tax collector to make additional assessments was expressly upheld in *Tunica County* v. *Tate,* 78 Miss. 294, 29 So. 74, and *Powell* v. *McKee,* 81 Miss. 229, 32 So. 919. It is conceded that there must be an assessment. The discharge of this duty in the first instance is the constitutional function of the assessor. Under the present scheme the assessor proceeds with his work now as heretofore. The power to tax is a necessary governmental function. The legislature has the undoubted right to fix a rate of taxation sufficiently high to cover the expenses and meet the demands of government. Instead of being forced to raise the rate, it ought to have the right to require all property to be assessed at true value—to demand of every owner of taxable property a fair and honest assessment. So long as this is done no one should have a right to complain.

On the point that the act itself was not complied with, because in the year 1916 the state board increased

the total valuations of personal property in the state approximately eight million dollars, we hold as follows: The statute, in our judgment, authorizes the state board to increase or decrease the total valuation of any class of property in any county to the end that there may be an equalization as between counties. In doing this the board has no authority to increase the assessment of any property above that placed by one or more of the highest assessed counties of the state. It could not arbitrarily exceed the highest valuation placed by any board upon the class of property dealt with. In all cases the act itself expressly limits the state board to true value. If they exceed true value, the individual has a right to protect himself. We cannot assume that the state board will exercise arbitrary power or undertake to confiscate property. If in equalizing as between counties it results that the total valuation of any class of property is thereby increased, a legitimate result is accomplished. The board has the same power to decrease as it has to increase, and the necessary result of the exercise of this power is not unlawful, but legitimate. Whether the board will rightfully exercise this power is a question that cannot now concern us.

The judgment of the learned circuit court will be reversed, the demurrer overruled, and the cause remanded.

*Reversed and remanded.*

SMITH, J. (dissenting). I am unable to agree with my Associates that section 6 of the statute here under consideration is susceptible of two interpretations, but, on the contrary, it seems to me to be plain, unambiguous, and susceptible of only one interpretation. By it, together with section 5, boards of supervisors are directed to raise or lower, horizontally, and by a fixed per centum, the assessments of the class or classes affected by the order of the state tax commissioners, and are given no power to apportion the gross amount by

which the assessment of a class is ordered to be increased or decreased among the individual members thereof as in the judgment of the members of the boards may be equitable and just. All that such boards are authorized to do on the complaint of a taxpayer is to take the matter up with the state tax commissioners and obtain, if possible, a revision of the order to raise or lower the assessments of the entire class or classes affected. The equalization scheme of the statute relates wholly to counties, and has no relation to the equalization of individual assessments, which are presumed to have been equalized before the assessment rolls are first approved by the boards of supervisors, so that the raising or lowering ordered by the state tax commissioners will affect all of a class alike. The revised and corrected property valuations to be made by boards of supervisors under the order of the state tax commissioners is intended to be final, and there is nothing in the statute to warrant the view that these valuations may be corrected by an appeal to the circuit court, or otherwise.

The construction given the statute by my Associates is not contended for by counsel for appellant; their only contention in this connection being that the statute does not violate the due process of law clause of the Constitution, for the reason that the order of the state tax commissioners to a board of supervisors raise or lower the assessed valuation of any class of property affects all of a class alike, and, therefore, under the rule announced in *Bi-Metallic Investment Company* v. *State Board of Equalization*, 239 U. S. 441, 36 Sup. Ct. 141, 60 L. Ed. 372, notice to and an opportunity to be heard by the individual taxpayers is not necessary. Under the construction given the statute by my Associates this question does not arise.

I express no opinion upon any other question in the case.