# WADLEY SOUTHERN RAILWAY COMPANY *v.* GEORGIA.

### ERROR TO THE SUPREME COURT OF THE STATE OF GEORGIA.

No. 27.   Argued January 30, 1914.—Decided January 11, 1915.

The general common-law rule that a carrier has the option of demanding freight in advance or on delivery applies not only to the shipper but also to the connecting carrier; but *quære* how far this rule may be or has been modified by statutes prohibiting discrimination.

This court, being bound by the construction given by the highest state court to a statute of the State, *holds* that the statute of Georgia involved in this case gives power to the State Railroad Commission to require a railroad to treat all connecting carriers alike in regard to payment of freight in advance or on delivery, and the only question

here is whether an order requiring a railroad company to cease demanding payment in advance from one carrier and not from another violates the due process provisions of the Fourteenth Amendment.

Although the particular section which authorizes an order of a state railroad commission may not provide for a hearing, if the state court has construed that section as part of the law establishing the commission and which does require hearings, that section is not unconstitutional under the Fourteenth Amendment as denying an opportunity to be heard; and so *held* as to the Georgia Railroad Commission Law.

An order of the Georgia State Railroad Commission, requiring a railroad to desist from demanding freight in advance on merchandise received from one carrier while it accepts merchandise of the same character at the same point from another carrier without such prepayment, being otherwise legal, is not so arbitrary and unreasonable as to be violative of the due process clause of the Fourteenth Amendment.

A State has power to impose penalties sufficiently heavy to secure obedience to orders of public utility commissions after they have been found lawful or after the parties affected have had ample opportunity to test the validity of administrative orders and failed so to do.

A party affected by a statute passed without his having an opportunity to be heard is entitled to a safe and adequate judicial review of the legality thereof. It is a denial of due process of law if such review can be effected by appeal to the courts only at the risk of having to pay penalties so great that it is better to yield to orders of uncertain legality than to ask the protection of the law. *Ex parte Young*, 209 U. S. 123.

Where, after reasonable notice of the making of an administrative order, a carrier fails to resort to the safe, adequate and available remedy of testing its validity in the courts and makes an unsuccessful defense by attacking such validity when sued for the penalty, it is subject to the penalty.

137 Georgia, 497, affirmed.

ADRIAN, Georgia, a station on the Wadley Southern Railway, is 10 miles from Rockledge, where the road connects with the Macon & Dublin R. R., and 27 miles from Wadley, where it connects with the Central of Georgia Railway. In consequence of this connection with both roads, goods could be shipped from Macon to Adrian, over either route. It was, however, to the interest of the

Wadley Southern to have such freight routed via the Central, because it thereby secured the haul of 27 miles from Wadley to Adrian instead of the 10-mile haul when goods were routed via Rockledge. In addition to this, the Central owned all of the stock in the Wadley Southern and allowed it more than a mileage proportion in the division of the through rate. For these reasons, the Wadley made the Central its preferred connection and received from it goods for Adrian without requiring the prepayment of freight, while refusing at Rockledge, to receive goods shipped from Macon over the Macon & Dublin R. R. unless the charges to Adrian were prepaid. Merchants shipping via Rockledge contended that this was an unjust discrimination and made complaint to the Railroad Commission, which, after "hearing evidence and argument of counsel," passed an order, dated March 12, 1910, requiring "the Wadley Southern to desist from such discrimination, and on and after the receipt of the order, to afford shippers via Rockledge, the same facilities for the interchange of freight that was afforded shippers over the line of the Central, via Wadley." On March 14, 1910, a copy of this order was received by the Wadley Southern, which however did not institute any proceeding to test its validity in the courts of Fulton County having jurisdiction of "suits against the Commission or its orders" (Ga. Code, § 2625). Instead, the company, on April 4, 1910, notified the Commission that it would decline to comply with the order on the ground that it was void. Accordingly, on May 26, 1910,—more than two months after the order was served,—a penalty suit was brought against the carrier by the State, in which it was alleged that, on *divers* days, the Wadley Southern had violated the order of the Commission and asking that a *single* penalty "not to exceed $5,000" should be imposed under the terms of the act of August 26, 1907 (Laws, 1907, p. 72). That statute provides (§ 12, p. 79) that all corporations

and persons subject to the public utility law "shall comply with every order made by the Commission *under authority of law,*" and any corporation or person which neglects to comply with such order shall "forfeit to the State of Georgia not more than five thousand dollars for each and every offense, the amount to be fixed by the presiding judge. Every violation  .  .  .  of any such order shall be a separate and distinct offense" and, *"in case of the continued violation, every day the violation thereof takes place shall be deemed a separate and distinct offense."*

In its answer to this penalty suit the Wadley Southern denied that it had been guilty of any unjust discrimination and contended that the order of the Commission, and the statute, on which it was based, in violation of the provisions of the Fourteenth Amendment, took property without due process of law, and also that the penalty statute operated to deny the carrier the equal protection of the law. In the trial before a jury there was testimony on the question as to whether there had been any discrimination and whether any difference in treatment was not justified by the difference in conditions. There was also evidence tending to show that the business of some shippers, through Rockledge, had suffered in consequence of the delay and expense incident to the requirement that freight on goods consigned to Adrian should be prepaid at Wadley. The jury returned a verdict in favor of the State and the judge imposed a fine of $1,000 on the defendant. The case was then taken to the Supreme Court of Georgia, where the judgment was affirmed (137 Georgia, 497), and the case is here on a writ of error, which raises the question as to whether the order and the statute under which it was made violate the provisions of the Fourteenth Amendment.

*Mr. T. M. Cunningham, Jr.,* with whom *Mr. A. R. Lawton* was on the brief, for plaintiff in error:

The statutes of the State of Georgia which impose the penalties and punishments for violation of an order of the Railroad Commission are contrary to the Fourteenth Amendment, as denial of due process of law and equal protection of the law. *Ex parte Young,* 209 U. S. 123; *Willcox* v. *Consolidated Gas Co.,* 212 U. S. 19.

The constitutionality of a statute is to be determined not according to the grace or favor of the officials who act under it, but according to terms of the statute itself. *Security Trust Co.* v. *Lexington,* 203 U. S. 323; *Georgia Railway* v. *Wright,* 207 U. S. 127, 138; *Roller* v. *Holly,* 176 U. S. 409.

The order of the Railroad Commission is contrary to the Fourteenth Amendment, in that it is an arbitrary and unreasonable exercise of the police power of the State and beyond the same, and in substance and effect deprives the plaintiff in error of its property without due process of law and denies it the equal protection of law. *Oregon Ry. & N. Co.* v. *Fairchild,* 224 U. S. 510, 528; *Southern Pacific Co.* v. *Schuyler,* 227 U. S. 601, 611.

The case is not one of unjust discrimination. *Gamble-Robinson Co.* v. *C. & N. W. Ry.,* 168 Fed. Rep. 161; *Little Rock & M. R. Co.* v. *St. Louis, I. M. & S. Ry.,* 59 Fed. Rep. 400; *S. C.,* aff'd, 63 Fed. Rep. 775; *Gulf, C. & S. F. Ry. Co.* v. *Miami S. S. Co.,* 86 Fed. Rep. 407; *Randall* v. *Richmond & D. R. Co.,* 108 N. Car. 612, 13 S. E. Rep. 137; *Oregon Short Line* v. *Northern Pac.,* 51 Fed. Rep. 465; *S. C.,* aff'd, 61 Fed. Rep. 158; *Coles* v. *Central R. R.,* 86 Georgia, 251, 255; *State of Georgia* v. *W. & T. R. R.,* 104 Georgia, 437. And see *Central R. R.* v. *Augusta Brokerage Co.,* 122 Georgia, 646, 650.

There are constitutional limits to what can be required of the owners of railroads under the police power. Requiring the expenditure of money takes property whatever may be the ultimate return for the outlay. *Missouri Pac. Ry.* v. *Nebraska,* 217 U. S. 196; *Oregon Ry. & N. Co.* v.

*Fairchild*, 224 U. S. 510; *Missouri Pac. Ry.* v. *Nebraska*, 164 U. S. 403; *Louisville & Nashville R. R.* v. *Central Stock Yards*, 212 U. S. 132. See also *Central Stock Yards* v. *L. & N. R. R.*, 192 U. S. 568.

The denial of due process of law and the taking of property in this case consists of compelling the plaintiff in error to act in a fiduciary capacity and as a collecting agent for the other roads and compels its clerks, which it pays, to work in the interest of its own and against the interest of other roads; or, if the charges are advanced, it takes money out of the pocket of the plaintiff in error to pay the other road freight charges. This is a direct and substantial taking of property.

The order of the Railroad Commission cannot be justified under the guise of the police power. It subserves no real public interest.

*Mr. James K. Hines*, with whom *Mr. T. S. Felder*, Attorney General of the State of Georgia, was on the brief, for defendant in error.

MR. JUSTICE LAMAR, after making the foregoing statement of facts, delivered the opinion of the court.

1. As a general rule, the carrier has the option to demand payment of freight in advance or on delivery. And, as there is a lien on the goods to secure the payment of charges, it is often a matter of indifference whether the freight is collected at the beginning or at the end of the transportation. The law has therefore always recognized that the company could exercise the one option or the other according to the convenience of the parties, the course of trade, the sufficiency of the goods to pay the accruing charges, and other like considerations.

2. What was true between carrier and shipper was

likewise true between carrier and its connections.  But there is a conflict in the authorities as to how far this common-law right has been modified by those statutes, which, while not requiring absolute uniformity, do prohibit unjust discrimination.  On the one hand, it is argued that the carrier has the right to make connections, establish joint routes and through rates for the purpose of facilitating and increasing its business.  As an incident of this right it is said. that the carrier may enforce the common-law rule and accept goods with or without the prepayment of freight, its decision being determined by the relation between the two companies, the amount of business interchanged, the solvency of the carrier against which the balance generally exists, the latter's promptness ·in settlement, and other like matters which, while aiding some of the carriers, do not increase the rates charged to the shipper in whose interest the laws against discrimination have been passed.  Among the cases which hold that such difference in treatment is not an unjust discrimination, prohibited by statute, is *Gulf, Col. &c. Ry.* v. *Miami Steamship Co.,* 86 Fed. Rep. 407.  There the Circuit Court of Appeals for the Fifth Circuit held that, under the Interstate Commerce Law, a common carrier might demand prepayment from one connection and not from another. *Cf. Atchison &c. R. R.* v. *Denver &c. R. R.,* 110 U. S. 667. A different view of the question has been taken by other courts (*Adams Express Co.* ·v. *State,* 161 Indiana, 328), including the Supreme Court of Georgia, which, in the present case, held that the statute, requiring railroads to furnish customary facilities for the interchange of freight empowering the Commission to prevent unjust discrimination, authorized that body to pass an order directing the Wadley Southern Railroad to discontinue the practice of requiring the Macon & Dublin Railroad to prepay freight to Adrian, while making no such demand from the Central Railway.  This construction of the state statute is binding

here and leaves for consideration the question as to whether such an order violated the provisions of the Fourteenth Amendment.

3. On that branch of the case the Wadley Southern has made many assignments of error. It contends, in effect, that without due process of law the order deprives it of the liberty of contract; takes from it a valuable right of property and deprives it of the profit it could have made in the exercise of the long-recognized common-law right to demand prepayment of freight from one connection without being compelled to make a similar demand from all other connections.

The section of the Code under which the order. was made did not expressly provide for notice and an opportunity to be heard; but the Supreme Court of Georgia held that it must be construed in connection with other parts of the Railroad Commission law which did contain such provisions. As said in *Louis. & Nash. R. R.* v. *Garrett*, 231 U. S. 298, 313, "It may be assumed that the statute of Kentucky forbade arbitrary action; it required a hearing, the consideration of the relevant statements, evidence and arguments submitted, and a determination by the Commission" as to whether the discrimination complained of was unjust. "But, on these conditions being fulfilled . . . the appropriate questions for the courts would be whether the Commission acted within the authority duly conferred by the Legislature . . . ; whether the Commission went beyond the domain of the State's legislative power and violated the constitutional rights of property by imposing confiscatory requirements." The Georgia court has likewise held that where the statute gave the Commission jurisdiction of the subject, its orders are binding unless shown to have been unreasonable, or to have violated some statutory or constitutional right. *Railroad Commission* v. *Louis. & Nash. R. R.*, 140 Georgia, 817 (6a), 836.

In this case the Commission dealt with a practice found to be unjustly discriminatory, but the order did not, as claimed, interfere with the carrier's legitimate right of management nor deprive it of any right of contract. It did not require the Wadley road, either at Rockledge or at Wadley, to receive, without prepayment of freight, goods whose value was insufficient to pay charges if the consignee should decline to accept them on arrival. Neither did it deprive the Wadley Southern of the right to solicit and encourage shipments via the Central. The order only prohibited a practice which had proved so preferential to some shippers and communities and so harmful to others as to amount to unjust discrimination. And while the Wadley Southern had the right to increase its earnings by encouraging shipments over the Central Railway so as to secure the longer haul and greater than mileage proportion of the joint rate, yet that right had to be exercised in subordination to the command of the statute prohibiting unjust discrimination. The Supreme Court of Georgia has ruled that the order was made in compliance with the requirements of the statute and was not unreasonable or arbitrary. That decision is controlling so far as the state law is concerned, and, there is, of course, nothing in the provisions of the Federal Constitution which prevents the States from prohibiting and punishing unjust discrimination of its patrons by a public carrier.

4. The Wadley Southern insists, however, that even if the Commission had the power to make the order, the judgment imposing a fine of $1,000 for its violation should nevertheless be set aside for the reason that the statute—authorizing so enormous a penalty as $5,000 a day for violating lawful orders of the Commission—operated to prevent an appeal to the courts by the carrier for the purpose of determining whether the order was lawful and, therefore, binding; or arbitrary and unreasonable, and therefore invalid. In support of this contention it

cites *Ex parte Young,* 209 U. S. 123, 163; *Willcox* v. *Consolidated Gas Co.,* 212 U. S. 19, 53.

It is, however, contended that those cases related to penalties for charging rates higher than those which had been established by the legislature without any hearing having been given to the carriers as to what were reasonable rates and are not applicable to a case like this, where the order was made after a full hearing had been given by the Commission to the Wadley Southern.

This contention would have been well founded if this and other hearings of a like nature before the Commission had resulted in orders which had the characteristics of a final judgment. But this was not so, for they were not conclusive. *Chicago &c. Ry.* v. *Minnesota,* 134 U. S. 418, 458. Their lawfulness was treated by the Georgia court in the present case as open to inquiry, when the Company was sued for the penalty. The question of their validity was also open to inquiry, in equity proceedings, in the state court, where they would have been set aside if found to be arbitrary and unreasonable, or to have violated some statutory or constitutional right. *Railroad Commission* v. *Louis. & Nash. R. R.,* 140 Georgia, 817 (6a), 836; *State of Georgia* v. *Western & Atlantic R. R.,* 138 Georgia, 835; *Southern Ry.* v. *Atlanta Sand Co.,* 135 Georgia, 35, 50. Such orders were also subject to attack in the Federal courts on the ground that the party affected had been unconstitutionally deprived of property. *Louis. & Nash. R. R.* v. *Garrett,* 231 U. S. 298, 313 and cases cited. And this right to a judicial determination exists whether the deprivation is by a rate statute—passed without a hearing (as in the *Young* and *Consolidated Gas Cases*); or by administrative orders of a Commission made after a hearing (as in the *Garrett Case, supra*). For rates made by the General Assembly or administrative orders made by a Commission are both legislative in their nature (*Garrett Case, supra; Grand Trunk R. R.* v. *Indiana Railroad Com-*

*mission,* 221 U. S. 400, 403). and any party affected by: such legislative action is entitled, by the due process clause, to a judicial review of the question as to whether he has been thereby deprived of a right protected by the Constitution. *Chicago &c.. v. Minnesota,* 134 U. S. 418, 458; *Chicago &c. Ry.* v. *Tompkins,* 176 U. S. 167, 174; *Prentis* v. *Atlantic Coast Line,* 211 U. S. 210; *Missouri Pacific Ry.* v. *Nebraska,* 217 U. S. 196, 207; *Oregon R. R. & Nav. Co.* v. *Fairchild,* 224 U. S. 510; *San Joaquin Co.* v. *Stanislaus County,* 233 U. S. 459; *Bacon* v. *Rutland R. R.,* 232 U. S. 134; *Detroit &c. R. R.* v. *Michigan R. R. Com.,* 235 U. S. 402.

The methods by which this right to a judicial review are secured vary in different jurisdictions. In some States there is a provision that within a designated time the order may be reviewed by the courts on the evidence submitted to the Commission. *Oregon R. R. & Nav. Co.* v. *Fairchild,* 224 U. S. 510; *State ex rel. Railroad Commission* v. *Oregon R. R. & Nav. Co.,* 68 Washington, 160, 167; *Seward* v. *Denver & R. G. R. R.,* 17 New Mex. 557; 131 Pac. Rep. 980. *Cf. Oregon R. R. & Nav. Co.* v. *Campbell,* 173 Fed. Rep. 957, 989. In others by proceedings in equity. In the Federal courts the method of procedure, when administrative orders are attacked as unconstitutional, is now regulated by § 266 of the Judicial Code as amended (March 4, 1913, c. 160, 37 Stat. 1013, 1014). But in whatever method enforced, the right to a judicial review must be substantial, adequate and safely available—but that right is merely nominal and illusory if the party to be affected can appeal to the courts only at the risk of having to pay penalties so great that it is better to yield to orders of uncertain legality rather than to ask for the protection of the law.

5. As statutes establishing Railroad Commissions and providing penalties for violations of legislative orders are of recent origin the cases discussing the subject are

comparatively few. See *Mercantile Trust Co. v. Tex. & Pacif. Ry.*, 51 Fed. Rep. 529 (4), 549 (14–15) (1892); *Louis. & Nash. R. R. v. McChord*, 103 Fed. Rep. 216, 225 (1900); *Cotting v. Kansas City Stock Yards*, 183 U. S. 79, 101 (1901); *Consolidated Gas Co. v. Mayer*, 146 Fed. Rep. 150, 154 (1906); *Ex parte Wood*, 155 Fed. Rep. 190 (1907); *Consolidated Gas Co. v. New York*, 157 Fed. Rep. 849 (1907); *Ex parte Young*, 209 U. S. 123 (1908); *Willcox v. Consolidated Gas Co.*, 212 U. S. 19, 53 (1909); *Missouri Pacific Ry. v. Nebraska*, 217 U. S. 196, 207 (1910) (building spur tracks); *Missouri Pacific Ry. v. Tucker*, 230 U. S. 340, 349 (1913); *Bonnett v. Vallier*, 136 Wisconsin, 193 (15, 16); *Coal & Coke Ry. v. Conley*, 67 West Va. 129, 132, and the present case of *Wadley Southern Ry. v. State of Georgia*, 137 Georgia, 497.

These cases do not proceed upon the idea that there is any want of power to prescribe penalties heavy enough to compel obedience to administrative orders, but they are all based upon the fundamental proposition that under the Constitution penalties cannot be collected if they operate to deter an interested party from testing the validity of legislative rates or orders legislative in their nature. Their legality is not apparent on the face of such orders but depends upon a showing of extrinsic facts. A statute therefore which imposes heavy penalties for violation of commands of an unascertained quality, is in its nature, somewhat akin to an *ex post facto* law since it punishes for an act done when the legality of the command has not been authoritatively determined. Liability to a penalty for violation of such orders, before their validity has been determined, would put the party affected in a position where he himself must at his own risk pass upon the question. He must either obey what may finally be held to be a void order, or disobey what may ultimately be held to be a lawful order. If a statute could constitutionally impose heavy penalties for violation of commands

of such disputable and uncertain legality the result inevitably would be that the carrier would yield to void orders, rather than risk the enormous cumulative or confiscatory punishment that might be imposed if they should thereafter be declared to be valid.

The first case which deals with the question, is *Mercantile Trust Co.* v. *Tex. & Pac. Ry.*, 51 Fed. Rep. 529 (4), 549 (14–15), decided in 1892. There statutory provisions imposing penalties tending to embarrass a party in appealing for protection against taking property without due process of law were held to be void. In *Cotting* v. *Kansas City Stock Yards*, 183 U. S. 79, 101 (1901), it was pointed out that an act which opened the doors of the courts but placed upon the litigant a penalty for failure to make good his defence, which was so great as to deter him from asserting that which he believed to be his right, was tantamount to a denial of the equal protection of the law.

Later the matter was elaborately discussed, most carefully considered and finally decided in *Ex parte Young*, 209 U. S. 123, where a statute fixed rates and, though it afforded no opportunity for a judicial hearing to determine whether the rates were confiscatory, yet imposed heavy and cumulative penalties for collecting other than those statutory rates—Those rates had not been established in pursuance of a plenary power of the legislature, but in view of constitutional limitations, the rates were valid only if they were found to be reasonable. Whether they were reasonable or not was not apparent on the face of the statute, but was dependent upon the proof of extrinsic facts. How doubtful and uncertain that then was, is illustrated by the fact that in the *Minnesota Rate Cases* (230 U. S. 352, 472, 473), these legislative rates were subsequently held to be confiscatory as to some carriers and as to others not confiscatory.

It was in the light of the fact that the penalty was im-

posed for charging other than those statutory rates, whose reasonableness was a matter of doubt and uncertainty, that this court in the *Young Case*, speaking through Mr. Justice Peckham, pointed out that a law which in terms or by the operation of deterrent penalties made statutes or orders of a Commission conclusive as to the sufficiency of rates would be unconstitutional. He summed up the discussion as follows (209 U. S. p. 147): "It may therefore be said that when the penalties for disobedience are by fines so enormous and imprisonment so severe as to intimidate the Company and its officers from resorting to the courts to test the validity of the legislation, the result is the same as if the law in terms prohibited the Company from seeking judicial construction of laws which deeply affect its rights." Like views were expressed as to the invalidity of the heavy penalties involved in *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19, 53. But the penalty provisions were separable and their invalidity did not defeat the balance of the statute (54).

The *Young* and *Consolidated Gas Cases* both related to rate statutes while in *Missouri Pacific Ry.* v. *Nebraska*, 217 U. S. 196, 207, the statute imposed a fine for the carrier's failure, on demand, to construct spur tracks to elevators. After showing that if the absolute requirement of the statute to build, was to be construed as being applicable only when the demand was reasonable, this court said that even on that construction the railroads must refrain from paying "at the peril of a fine, if they turn out wrong in their guess that in the particular case the court will hold the demand not authorized by the act. If the statute makes the mere demand conclusive, it plainly cannot be upheld. If it requires a side track only when the demand is reasonable, the railroad ought, at least, to be allowed a hearing in advance to decide whether the demand is within the act."

In *Missouri Pacific Ry.* v. *Tucker*, 230 U. S. 340, 349, the

question was presented in still a different aspect. The statutory rate on the shipment of oil involved in that case was $12 a barrel. The act provided that if the carrier charged in excess of such rates it should be liable to any person injured in the sum of $500 as liquidated damages, to be recovered by an action in any court of competent jurisdiction. The carrier instead of charging the statutory rate of $12 charged the old rate of $15.02 and the shipper sued to recover $500 as damages for collecting $3.02 too much. The act made no provision for a hearing in advance to determine whether the statutory rate of $12 was reasonable. The state court, however, held that as the statute did not forbid such judicial investigation the carrier had the right, when sued for a penalty, to defend by showing that the statutory rates were unreasonable. But, as was pointed out in the decision of this court, the right to a hearing by way of defense after the $15.02 had been collected, failed to recognize "the real plight of the carrier" (349). For, when the oil was tendered for shipment it had to be accepted at the rate of $12—and thus be illegally deprived of $3.02 if the statutory rate of $12 was confiscatory; or else, the carrier had to charge its existing rate of $15 and run the risk of having to pay more than a hundred times the amount of the overcharge if the new $12-rate was ultimately sustained. Of course the right to make a defense, at the risk of having to pay such an enormous penalty, was merely illusory. For, if such penal statutes were indeed constitutional, the carrier, in every instance, would submit to the deprivation of some of its property, under a rate of doubtful validity, rather than run the risk of paying out all of its property by way of penalties imposed in the event the rate should ultimately be sustained.

The Supreme Court of Wisconsin in *Bonnet* v. *Vallier*, 136 Wisconsin, 193 (15, 16), for the same reason, held a penalty statute void which imposed cumulative fines for

failing to comply with indefinite and uncertain regulations as to the construction of tenement houses.

The question also was carefully considered in *Coal & Coke Ry.* v. *Conley,* 67 W. Va. 129, 132, where it was held that enormous and accruing penalties could not be imposed for charging more than statutory rates of uncertain reasonableness.

6. In the light of this unbroken line of authorities, therefore, a statute like the one here involved (under which penalties of $5,000 a day could be imposed for violating orders of the Commission) would be void if access to the courts to test the constitutional validity of the requirement was denied; or, if the right of review actually given was one of which the carrier could not safely avail itself.

In considering that question in the present case, the constitutionality of the act involved, is not to be decided by the conduct of the plaintiff in error, nor by the fact that the State only asked a penalty for one day's disobedience instead of many. Neither can the statute be construed as a single legislative act. It must be treated as part of a system of laws creating the Railroad Commission, defining its powers and subjecting it to suit.

This point is brought out in the statement of the Brief of the Attorney General and counsel for the State, wherein it is said that "the safeguards thrown around persons and corporations affected by this [penalty statute] are such as to rob it of the charge of imposing such enormous and grossly excessive penalties as to render it unconstitutional. In the first place, such persons and corporations are entitled to a hearing before the Commission [a contention already discussed]. And, in the second place, provision is made for the institution of suits against the Railroad Commission of Georgia when its acts are illegal or unconstitutional (Civil Code of Georgia, 1911, § 2625)." From an examination of that section of the Code it is quite clear that it recognizes the right to a judicial review

of administrative orders. Until it has been given a contrary construction by the state court, it must be here construed in such a way as to leave it valid and as conferring that sort of right which furnishes the adequate and available remedy which meets the requirement of the Constitution. Any other construction would not only impute to the legislature an intent to deny the equal protection of the law and to permit the carrier to be deprived of property without due process of law, but it would operate to nullify the penalty section as a whole. Giving then § 2625 that construction which makes it constitutional and it appears that the laws of Georgia gave to the Wadley Southern R. R. Co. the right to a judicial review of the order of March 12, 1910, by a suit against the Commission.

7. The only question then left for determination is whether in view of such right, the penalty can be collected for the violation of an order not known to be valid at the date of the disobedience sought to be punished. On that question, little can be found in the books. But on principle, and on the authority of all that has been said on the subject, there is no room to doubt the power of the State to impose a punishment heavy enough to secure obedience to such orders after they have been found to be lawful; nor to impose a penalty for acts of disobedience, committed after the carrier had ample opportunity to test the validity of administrative orders and failed so to do.

In *Cotting* v. *Kansas City Stock Yards*, 183 U. S. 79, Justice Brewer first pointed out that there might be a distinction between punishing for acts done before and for those done after the validity of the rate statute had been settled, saying (p. 102):

"It is doubtless true that the State may impose penalties such as will tend to compel obedience to its mandates by all, individuals or corporations, and if extreme and cumulative penalties are imposed only after there has

been a final determination of the validity of the statute, the question would be very different from that here presented."

Another case dealing more directly with the question is that of *Railroad Commission of Oregon* v. *Oregon R. R. & Nav. Co.*, 68 Washington, 160. The act there under consideration imposed a punishment for violating orders of the Commission but gave the carrier adequate and available remedy by conferring upon it the right to a hearing in court as to their legality, otherwise it was to be treated as conclusive. *Oregon R. R. & Nav. Co.* v. *Fairchild*, 224 U. S. 510. In a suit for the recovery of the statutory penalty for failing to build a station, as required by the Commission, the court said "the railroad company having failed to review the order as it was permitted to do under the act, the order became, in the language of the statute, 'final and conclusive.' . . . ."

*Coal & Coke Ry.* v. *Conley*, 67 W. Va. 129, 132, contains a very full discussion of the subject. In that case the statute imposed a penalty for charging rates other than those prescribed in a legislative act, which, however, was altogether silent upon the subject of a judicial review as to the reasonableness of the rates. The court recognized that if that silence was to be construed into a denial of the right to a hearing in court the penalty provision would be void. It held however that the failure of the penalty statute to say anything about the right of review could not be construed into a denial of that right. That conclusion, and the further holding that penalties could not accrue while the question of the validity of the rates was being determined in appropriate judicial proceedings instituted in a Court of Equity for that purpose, is specially applicable here. For the Georgia Code, instead of being silent on the subject, contains a section which punishes a violation of "lawful orders," and another provision, in the same Chapter, which expressly contemplates that proceedings

may be brought against the Commission to test the validity of its orders.

If the Wadley Southern Railroad Company had availed itself of that right and—with reasonable promptness—had applied to the courts for a judicial review of the order, and if, on such hearing, it had been found to be void, no penalties could have been imposed for past or future violations. If in that proceeding, the order had been found to be valid, the carrier would thereafter have been subject to penalties for any subsequent violations of what had thus been judicially established to be a lawful order—though not so in respect of violations prior to such adjudication.

But, where, as here, after reasonable notice of the making of the order, the carrier failed to resort to the safe, adequate and available remedy by which it could test in the courts its validity, and preferred to make its defense by attacking the validity of the order when sued for the penalty, it is subject to the penalty when that defense, as here, proved to be unsuccessful.

The judgment of the Supreme Court of Georgia is

*Affirmed.*