Johnson, J.
It is shown by the record that the applicant gas company has been furnishing gas to the villages with its pipe lines and equipments under a franchise-contract made with its predecessor in title; that when the company proposed to discontinue the service the municipal corporation in May, 1918, commenced an action in the common pleas court of Auglaize county seeking an injunction to prevent the discontinuance of the service from West Gas Field to the village and inhabitants, and to prevent the company from taking up its lines in the village and the supply lines leading thereto, and* from otherwise abandoning the gas field.
It is further shown that subsequently the parties entered into an agreement for the settlement of - the legal proceeding and in accordance with its terms the suit was dismissed without prejudice to another action, and that also in accordance with its terms a rate-ordinance fixing the price to be charged for natural gas in the village was passed by the village and accepted by the company. The contract pro *28 vided that immediately upon the acceptance of the gas ordinance the company should have authority to take up the pipe lines in the West Gas Field “that will not materially lessen the present volume of gas furnished from said gas field to the village.”
The contract further provided that as long as practicable the gas company will furnish and supply natural gas to the village and its inhabitants through its lines and through a new feed line at the rates fixed by the ordinance “unless released therefrom by the acts of the parties hereto or by judgment or decree of a court of competent jurisdiction.”
It further provided that in the event the gas com-pany in the future should be released from its obligations in regard to the furnishing of. natural gas to the village, by acts of the parties or by judicial decree, the gas company agreed to transfer and set over to the village without cost all that part of its gas distributing pipe lines in the village that are buried and located under paved streets and further that it would sell, assign and transfer to the village all gas pipe lines then buried or contained under streets not paved, and also a four-inch line between Minster and New Bremen, if the corporation desired to acquire the same and agreed to accept in payment therefor a price to be fixed by three arbitrators chosen, in the manner provided in the contract.
It will be noted that there is an express contract between the gas company and the villages by which the company agrees that it will, “as soon as practicable,” furnish natural gas to the village and its inhabitants with its pipe lines and equipments at *29 the rates fixed by the ordinance “unless released therefrom by the acts of the parties hereto or by the judgment or decree of a court of competent jurisdiction.”
Subsequent to the. making of this contract, to-wit, on the 14th of November, 1919, the village brought suit in the court of common pleas of Auglaize county to enjoin the gas company and J. F. Arnold, who then claimed to have purchased the pipe lines, from discontinuing the service and dismantling the equipment. Subsequently, to-wit, December 2, 1919, the application involved in this proceeding was filed with the public utilities commission. It will also be noted that pursuant to the agreement of August 1, 1918, settling the prior suit, the village passed a rate-ordinance fixing the price to be charged for natural gas, which was accepted by the company. The term fixed by the ordinance was three years, and its acceptance by the company constituted a contract between the parties for three years from and after August 3, 1918.
It is contended by the defendants in error that the action of the commission was authorized by the provisions of Sections 504-2 and 504-3, General Code (108 O. L., 372), passed April 15, 1919, known as the Miller act. Section 504-2 provides that no public utility furnishing service within the state shall abandon any gas line, etc., except as provided in Section 504-3. By Section 504-3 it is provided that any public utility desiring to abandon or close, or have abandoned, withdrawn or closed for service, all or any part of any such line or'lines, shall first make application, to the public utilities *30 commission in writing; that upon the hearing of the application the commission shall ascertain the facts and make its finding thereon, and if such facts satisfy the commission that the proposed abandonment, withdrawal or closing of service is reasonable, having due regard for the welfare of the public and the cost of operating the service, they may allow the same; and the section further contains provisions with reference to notice and other matters not pertinent here.
The commission by its order authorized the permanent abandonment of the respective facilities in and about the village.
It is contended that this action by the commission amounted to a judicial decree releasing the gas company from the further furnishing of gas. The public utilities commission is an administrative board and only has such authority as the statute creating it has given it. This court has repeatedly declared that the powers of the commission are conferred by statute and that it has no other authority than that thus vested in it. City of Cincinnati v. Public Utilities Commission, 96 Ohio St., 270; Interurban Ry. & Terminal Co. v. Public Utilities Commission, 98 Ohio St., 287; Sylvania Home Telephone Co. v. Public Utilities Commission, 97 Ohio St., 202, and Village of Oak Harbor v. Public Utilities Commission, 99 Ohio St., 275.
The judicial power of the state is vested in courts, the creation of which and their jurisdiction is provided for in the judicial article of the constitution, Article IV. The public utilities commission is in no sense a court. It has no power to judicially *31 ascertain and determine, legal rights and liabilities, or adjudicate controversies between parties as to contract rights or property rights. The Miller act does not purport to confer such power upon the public utilities commission, and if it did so in any of .its terms it would be to that extent invalid.
The creation of the commission, with supervisory and regulatory powers, is authorized by Section 2, Article XIII of the Constitution as amended in 1912. And by the amendment of the judicial article of the constitution adopted at the same time it was provided that this court should have “such revisory jurisdiction of the proceedings of administrative officers as may be conferred by law.”
As pointed out in Hocking Valley Ry. Co. v. Public Utilities Commission, 100 Ohio St., 321, 323, “if by legislative act or administrative order property or rights are taken or affected parties must be given full opportunity to show by judicial review that the taking or interference with rights or property was so arbitrary, unjust or unreasonable as to amount to a deprivation in violation of the constitution.” This principle is nowhere denied. It is invoked and declared in C., M. & St. P. Ry. Co. v. Minnesota, 134 U. S., 418, and Hocking Valley Ry. Co. v. The Public Utilities Commission et al., 92 Ohio St., 9, 14; Wadley Southern Ry. Co. v. Georgia, 235 U. S., 651, at page 661; State, ex rel. Oregon Rd. & Navigation Co., v. Fairchild, 224 U. S., 510, 528, and Kansas City Southern Ry. Co. v. C. H. Albers Commission Co., 223 U. S., 573.
Now, in this case there is a valid subsisting contract between the parties under the terms of which *32 the gas company is under obligation to furnish gas at the rate stipulated in the contract for a period of three years, and it is under obligation to sell to the village the portion of its pipe lines as above stated in the event that it should be released from furnishing gas by the acts of the parties or by judgment or decree of a court of competent jurisdiction. That is the express provision of the contract. The rights created under it are protected by the federal and state constitutions as shown above. Moreover, as shown by the record, there is pending in a court of competent jurisdiction, the court of common pleas of Auglaize county, a proceeding invoking the jurisdiction of the court for the judicial determination of the very question presented on the application to the commission and the rights of the parties in connection with the facilities described in that application. That proceeding in the court of com- ■ mon pleas was brought before the filing of the application in this case. The court of common pleas had acquired full jurisdiction of the subject-matter and of the parties and when this situation was shown by the answer of the villages, and the testimony in the proceeding before the public utilities commission, it was its duty under this state of facts to dismiss the petition.
Manifestly, the permission given by the commission to withdraw or abandon a particular service must be given to parties owning or controlling the facilities, and if these parties have by contract bound themselves to a different use and a different disposition of the facilities, and the rights and duties under *33 that contract are involved in litigation in a court of competent jurisdiction, the parties are not entitled to the order by the commission.
The order will be reversed.

Order reversed.

Hough, Wanamaker and Robinson, JJ., concur.
Matthias, J., concurs in the judgment.