STUART *v.* BOARD OF SUPERVISORS.

(In Banc.   Jan. 4, 1943.   Suggestion of Error Overruled Feb. 8, 1943.)

[11 So. (2d) 212.   No. 35085.]

(1)

O. B. Triplett, Jr., of Forest, for appellant.

4

6

**Greek L. Rice,** Attorney-General, by **W. D. Conn, Jr.,** Assistant Attorney-General, for appellee, State Tax Commission.

12

J. Knox Huff, of Forest, for appellées.

16

Argued orally by **O. B. Triplett, Jr.**, for appellant.

**Griffith, J.**, delivered the opinion of the court.

Section 3191, Code 1930, as amended by Chap. 187, Laws 1934, so far as material to the questions now before us, reads as follows:

"The board of supervisors of each county shall have power, upon application of the party interested . . . to change, cancel or decrease an assessment in the manner herein provided, at any time after the assessment roll containing such assessment has been finally approved by the state tax commission, prior to the ending of the fiscal year in which the taxes on such assessment are payable, under the following circumstances and no other:

". . . When the property has been assessed for more than its actual value; but the board shall require proof of the overvaluation by two or more persons who know of their own personal knowledge that the property is assessed for a higher sum than its true value."

Appellant is the owner of several separate parcels of land in Scott County. The board of supervisors, in passing upon the assessment rolls of the county for the year 1940 at its August and September, 1940, sessions, increased the assessment on appellant's land as made by the assessor, and the rolls thus increased were approved by

the State Tax Commission Thereafter and on March 4, 1941, during a regular session of the board of supervisors, appellant presented his application or petition to the board praying that the assessment made against his lands, the lands being fully and definitely described in the petition, be reduced to the extent of $1 per acre, it being alleged that to that extent the lands were assessed at more than their true value. The petition was supported by an affidavit annexed thereto of two persons who affirmed upon their own personal knowledge, and at this point it may be appropriate to note that the petition was in all things strictly in compliance with all and singular the requirements of the law, and was within the statutory time.

This petition with the proof in support thereof was heard by the board of supervisors on March 6, 1941, and on that date the board entered its order reciting inter alia, "and it appearing to the board of supervisors from the evidence, both oral and documentary, offered in support of said application that the assessment as it now appears on said roll is incorrect in the following particulars: That the property listed as follows was assessed at values which hereinafter follow and should be allowed reduction as stated below:", and this is followed by the several descriptions and a reduction of $1 per acre for each description, and the order concludes with the recital that "The assessment of each separate tract listed by petitioner and made a part of this order by reference is assessed for more than its actual value to the extent shown by petitioner in the extreme right hand column thereof, the Clerk of this Board being directed to copy said schedule as an exhibit to this order."

The further details of the order will not be pursued, but we will summarize by the statement that in all respects the order was full, complete, and specific, complying with every requirement of the law, and it did reduce the assessment of appellant's several parcels of land to

the extent of one dollar per acre on each of the said parcels.

Section 3194, Code 1930, requires that when an assessment has been reduced under Section 3191, the clerk of the board of supervisors shall certify two copies of the order of the board of the State Tax Commission and shall attach thereto the original and duplicate application; and the section further provides: ''Upon receipt of the copies of the order and application . . . the state tax commission shall consider the same, and approve or disapprove the order, and enter its approval or disapproval thereon, and shall file one copy of the order . . . with the auditor of public accounts and shall return the other copy to the clerk of the board of supervisors. Upon receipt of the approved order . . . the clerk shall transmit a certified copy of the order to the tax collector of his county and shall file the application as a record in his office.''

It will be noted that there is no provision for notice by, or for a hearing before, the Tax Commission, and no rule is laid down for the guidance of the commission, and that nothing is required to be done by the clerk or by the board in case the order is disapproved by the State Tax Commission.

All the required papers were filed with the State Tax Commission on March 12, 1941, and on March 26, 1941, the commission disapproved the order of the board of supervisors, but without any statement of the reason therefor, and sent the copy with the disapproval endorsed thereon to the clerk of the board of supervisors. Thereupon the board of supervisors and the other revenue officers of the county were adhering to and proceeding in the demand to collect taxes on appellant's land under the original assessment, rather than upon the reduced assessment, whereupon appellant paid to the tax collector, under protest, a portion of the taxes demanded and filed his bill for relief in the chancery court and paid to the clerk as register

of the court the balance so demanded, to be held by him to abide the result of his suit.

When the suit came on to be heard, appellant proved by six witnesses upon a stipulation between the parties that the land of appellant was assessed in excess of its true value to the extent of one dollar per acre; and this evidence is undisputed. Appellant further proved that the State Tax Commission in its supposed action in disapproving the order of the board of supervisors had no evidence before it, gave no notice to the taxpayer, acted without any notice to him, and that when he learned of its attempted action, he went to the tax commissioner in charge and offered to make the proof by any competent evidence, and that the Tax Commission, through its vice-chairman, refused to permit him to be heard, and stated that the commission would not be interested in any evidence whatever; and all this also is undisputed. Appellant's bill was dismissed by the chancery court, and he appeals to this court.

Appellant contends, with the support of a wealth of authorities, that the provision of Section 3194, which confers upon the Tax Commission the jurisdiction to review a reduction made by the board of supervisors under Section 3191, is void on its face for the reasons, (1) that the legislative department has fixed in Section 3194 no standard by which the action of the tax commission shall be guided, and (2) has provided for no hearing before the commission, and for no notice to the petitioning taxpayer of the time when the commission will hear the issue or issues under review.

Under the familiar rule that a court will not denounce a statute as void when there exists another ground upon which the same result would be reached, we pretermit decision on the aforementioned questions and proceed rather to attend to the merits of this case upon the fundamental principle implicit in Section 112, Constitution 1890, that no parcel of real property and no piece of personal property shall be assessed at more than its actual

value when the owner or other party legally bound to pay the ad valorem taxes thereon has shown in any manner provided by law, as the owner has done here, that the assessment or proposed assessment is at a sum in excess of actual value and how much the excess is, and this regardless of what any board or commission or other assessing authority may attempt to the contrary.

Had the board of supervisors denied appellant's petition in this case, he would have been entitled under Section 62, Code 1930, to appeal from its decision to the circuit court at any time within ten days after the adjournment of the meeting at which such adverse decision was made, and the circuit court would have tried the controversy anew, and if decided in favor of the taxpayer, the judgment to that effect would be certified to the board of supervisors who would thereupon be obliged to conform to the judgment so rendered, and the State Tax Commission in such case would have nothing to do with the matter.

In the trial anew in the circuit court on the appeal thereto, the taxpayer would be entitled to an instruction to the jury to the effect that under the Constitution of this state no specific parcel of real estate may be assessed at more than its actual value, and that if the jury believe from the preponderance of the evidence that the property in question has been assessed for more than its true value, the jury shall return a verdict for the taxpayer and shall in its verdict find and fix the amount of such excess.

Certainly, the rights of the taxpayer cannot be less in extent or effect when, as in this case, the decision of the board of supervisors has been in favor of the taxpayer. In the latter case the statute, Section 3194, has made the State Tax Commission a board of review, and the law under the Constitution writes the same instruction to the commission for its guidance which the court would have given to the jury, as aforestated. The jury could not have resorted to common or judicial knowledge as to the value of the particular parcels of land, whatever may be

the rule as to land values generally, and neither may the Tax Commission. This issue is not within the permissible range of common knowledge, as we have recently had occasion to say. Taylor v. Twiner, 193 Miss. 410, 9 So. (2d) 644, 645. And the jury could not have brought out a verdict, contrary to the evidence, on the theory that the assessment, as originally made, would equalize the value with other property of the same class throughout the state or county; for the jury had been instructed that the property could not be assessed on any theory or pretense beyond its actual value, and the law under the Constitution gives the same instruction to the Tax Commission. Assessing any particular parcel of property at more than its actual value is not a permissible device in any constitutional procedure for equalization. Compare State ex rel. v. Wheatley, 113 Miss. 555, 74 So. 427.

It follows, therefore, that before the State Tax Commission could lawfully reject or disapprove an order of the board of supervisors making a reduction under Section 3191, the commission must have before it competent evidence to the effect that the order of the board of supervisors is in fact erroneous. In the case in hand it is undisputed that the Tax Commission had before it no competent evidence whatever, and that when the taxpayer appealed to the commission to allow him to present the evidence before the commission, the offer was denied with the statement by the commissioner in charge that the Tax Commission would not be interested in any evidence. The action and order of the State Tax Commission declining to approve the order of the board of supervisors was, therefore, without legal support and was void, thus leaving the order of the board, made in response to the petition of the taxpayer, in full effect, and the chancery court should have so declared and adjudged, with such further orders in its decree as would furnish the taxpayer full relief in the premises.

We do not pursue the many contentions made in behalf of appellees other than to pronounce them untenable. We

make an exception, however, in respect to the contention that appellant should not be allowed recourse to chancery, because, as it is said, he had a plain, adequate, and efficient remedy at law by appeal. There has been no assertion that the taxpayer should have appealed directly from the adverse decision of the State Tax Commission since the statute makes no provision whatever for an appeal from the decision of the commission, and certainly he could not appeal from the action of the board of supervisors, for that decision was favorable to him. But it is said that after the order of the Tax Commission disapproving the decision of the board of supervisors had been received by the board, the latter should have entered an order denying the taxpayer's petition so that the taxpayer could appeal from that order, and that the taxpayer should have sought such an order from the board and that not having done so is barred because not having appealed from the unentered order. There are several obvious answers to this, but it is sufficient to say, in this respect, that, as already mentioned, the statute makes no provision whatever for any further order to be entered by the board upon rejection by the State Tax Commission, and it is to state no more than an elemental proposition that a board of supervisors can enter only such orders as are authorized by statute.

Without further prolonging this opinion, we hold, as heretofore indicated, that the order of the State Tax Commission disapproving the action of the board of supervisors was void and that the order of the board of supervisors sustaining the petition of the taxpayer stands in final force and effect, and that equity has jurisdiction and the duty to afford full relief to the taxpayer in the premises.

We, therefore, reverse the decree and enter here the decree which the chancery court should have entered under the facts which, as already stated, are undisputed. The decree here will be that the order of the State Tax Commission made, or attempted to be made, on March 26,

1941, is void and is vacated and reversed; that the order made by the board of supervisors on March 6, 1941, stands in full force and effect; that the clerk and register of the chancery court shall, out of the money deposited in his hands by appellant, pay to the tax collector of said county the balance of the taxes due on the lands for the year 1940, calculated on the valuations shown in the said order of March 6, 1941, and without interest, cost or damages, the clerk delivering to the tax collector at the same time a certified copy of said last mentioned order, which certified order shall be the warrant to the tax collector for his collections on said land for the taxes of 1940 and also for the taxes of 1941, and the remainder of said money, after paying as aforesaid the balance of the taxes for the year 1940, the clerk and register shall return to appellant. And appellant shall have leave to file any supplemental bill to enforce the decree now entered if necessity therefor shall arise. Appellees to pay all court costs.

Reversed, and decree here for appellant.

DISSENTING OPINION.

**Anderson, J.,** delivered a dissenting opinion.

Appellant filed his bill in the chancery court of Scott County against appellee, the board of supervisors of that county, to enjoin the latter from levying the 1940-1941 taxes on his lands in that county. Equity jurisdiction was invoked upon the ground there was no adequate remedy at law. That is the question, and the only question, in the case, although there are other questions leading into it which become a part of it. There is no dispute as to the facts. Before the bill was filed the equalization meeting of the board of supervisors had passed and so had the equalization meeting of the State Tax Commission and also the final meeting of the board of supervisors correcting and approving the rolls. The board of supervisors had complied with the statute requiring notice to the taxpayers of the latter meeting. Those meetings of the board of supervisors and the Tax Commission are pro-

vided for in Sections 3162, 3163, 3164, 3165, 3167, 3176, 3177 and 3178, of the Code of 1930. At the final meeting of the board, notice of which had been given appellant along with all other taxpayers, appellant made no objection to the assessment of his lands, as he had the right to do, therefore the rolls were approved so far as he was concerned. He waited and proceeded under Sections 3191 and 3194 of the Code. The applicable provisions of Section 3191 are the first and last paragraphs, which follow:

"The board of supervisors of each county shall have power, upon application of a party interested; or by the tax assessor on behalf of such party, or otherwise as prescribed herein to change an assessment in the manner herein provided, at any time after the assessment roll containing such assessment has been finally approved by the state tax commission, under the following circumstances, and no other:

. . . . .

"14. When the property has been assessed for more than its actual value; but the board shall require proof of the overvaluation by two or more persons who know of their own personal knowledge that the property is assessed for a higher sum than its true value."

He made application to have the assessed value of his lands reduced from $16,850 to $13,268, being a total reduction of $3,582, and made the necessary proof required by the statute for that purpose. The board of supervisors made the following order thereon:

"It is, therefore, ordered by the Board of Supervisors of Scott County, Mississippi, that the assessment on pages and lines be set forth in said schedule be reduced from $16,850.00 to $13,268.00, being a total reduction of $3,-582.00 for the years of 1940-1941.

"It is further ordered, that the Clerk of this Board certify two copies of this order to the State Tax Commission, for its approval or disapproval; and, if the foregoing order be approved by the State Tax Commission, the Clerk of this Board is hereby authorized and directed

to change the Original Assessment Roll in his office, and the Sheriff and Tax Collector of this County is hereby authorized and directed to change the Copy in his possession, to conform with the provisions of this order; and the Sheriff and Tax Collector be given the proper credit therefor, including district taxes.''

Section 3194, Code of 1930, provides that the board of supervisors shall certify a copy of their order up to the State Tax Commission for approval or disapproval. That was done, and the State Tax Commission entered the following order, which they certified back to the board of supervisors as required by the statute:

''The order of the Board of Supervisors, on the reverse side hereof, reducing or changing an assessment, is on Mar. 26, 1941, by the undersigned, hereby Disapproved.

''The State Tax Commission
''By M. C. Young,
''Vice Chairman

''Filed Mar. 12, 1941
''The State Tax Commission
''By A. S. Coody,
''Secretary''

The board of supervisors entered no further order in the matter. However, they were proceeding to levy taxes for the years involved on the assessment as originally approved and not on the reduced assessment disapproved by the Tax Commission; in other words, treating the action of the State Tax Commission as final. Thereupon appellant filed his bill to enjoin the levy. The cause was heard on bill, exhibits, answer, demurrer and evidence, resulting in a decree in favor of the board of supervisors.

Sections 62 and 3179, Code of 1930, give any taxpayer aggrieved at the action of the board of supervisors in fixing the value of his land for taxation, the right of appeal to the circuit court. There is no merit in the argument that there was no adverse order of the board of supervisors from which Stuart could appeal, as provided by the statute. What occurred between the board of supervisors

and the Tax Commission amounted to nothing less than a refusal by the former to grant the relief asked. That judgment was final. In other words, the board of supervisors said to Stuart, by its order, the relief is granted provided the Tax Commission concurs, if the Tax Commission refuses to agree it is denied. The Tax Commission refused and certified its judgment so doing to the board of supervisors, as required by the statute. The order of the board of supervisors was conditional and the condition was not complied with. It necessarily followed that the order was revoked. Furthermore, Stuart began the proceeding before the board of supervisors. The proceeding, therefore, was not against him but by him. He was affected with notice that the action of the board was not final but subject to approval by the Tax Commission. He was, therefore, due to keep watch on the proceedings of the board of supervisors in order to ascertain when the judgment of the Tax Commission should be certified back, thereby making the order of the board one of denial instead of a grant of relief. If Stuart had any doubt about whether the order of the board was final from which he had the right to appeal to the circuit court, he was due to ask the board to make it final, and if the board had refused to act certainly it would have amounted to a denial of his claim of overvaluation.

The taxpayer's remedy is by appeal to the circuit court, which is exclusive. In Madison County v. State Highway Commission, 191 Miss. 192, 198 So. 284, 287, the court said: ''Moreover, the almost universal test of the jurisdiction of a court of equity to issue injunctions is the absence of a legal or other remedy by which the complaining party might obtain the full relief to which the facts and circumstances may warrant.'' See Coulson v. Harris, 43 Miss. 728; McDonald v. Murphree, 45 Miss. 705; Anderson v. Ingersoll, 62 Miss. 73; Board of Supervisors of Noxubee County v. Ames (Miss.), 3 So. 37; Purvis v. Robinson, 110 Miss. 64, 69 So. 673.

The only authority of the chancery court to enjoin the collection of taxes is Section 420 of the Code of 1930. That section provides that the chancery court shall have jurisdiction of suits by one or more taxpayers to restrain the collection of any taxes levied or attempted to be collected *"without authority of law."* (Emphasis ours.) Where the action of the board is on a subject matter over which it had no jurisdiction, the chancery court has jurisdiction under Section 420. If the converse exists, as in the present case, the remedy by appeal is exclusive. Those principles were emphasized in Purvis v. Robinson, supra.

It is argued that Stuart was entitled to resort to a court of chancery because he had been denied due process before the State Tax Commission, such denial consisting in the failure of the Tax Commission statute to provide for a time and notice to the taxpayer of the hearing by it. It is true that the statute contains no such provision. Nevertheless, under the law there was no denial of due process. Due process in proceedings before boards and commissions is applied with more liberality in favor of the public than it is in private litigation. 12 Am. Jur. 307, sec. 612; Bourjois v. Chapman, 301 U. S. 183, 57 S. Ct. 691, 81 L. Ed. 1027; Lehigh Valley R. R. Co. v. Board of Public Utility Commissioners, 278 U. S. 24, 49 S. Ct. 69, 73 L. Ed. 161, 62 A. L. R. 805; Wadley Southern R. Co. v. Georgia, 235 U. S. 651, 35 S. Ct. 214, 59 L. Ed. 405.

In the Bourjois case, a statute of the state of Maine prohibited the sale and use in the state of cosmetic preparations unless registered with the State Board of Health and certain fees paid. It provided for no hearing by persons and corporations seeking to sell such preparations in the state; however, they were given a remedy in the courts after the Board of Health had acted, in which the protection of their rights was fully provided for.

In the Lehigh Valley Railroad case, a New Jersey statute authorized the State Public Service Commission to require the railroads of the state to eliminate certain

highway grade crossings. The expense of doing so was large. The statute made no provision for a hearing by the railroad companies before the Public Service Commission. The whole matter though, under the laws of the state, could be reviewed on certiorari. The Supreme Court held that the fact that no hearing was provided for before the Public Service Commission was not a denial of due process.

In the Wadley case, the Georgia statute authorized the imposition upon a railroad company of a penalty of $5,000 per day for violating an administrative order of the State Railroad Commission. The Supreme Court held that it did not deny the railroad due process because under another statute of the state the railroad company had a right to a judicial review of the validity of the order.

In Alabama Public Service Commission v. Mobile Gas Co., 213 Ala. 50, 104 So. 538, 41 A. L. R. 872, the decision was to the same effect.

In the Wheatley case, State ex rel. v. Wheatley, 113 Miss. 555, 74 So. 427, one of the questions involved was whether a taxpayer, the valuation of whose land had been increased by the Tax Commission at its equalization meeting, was denied due process because the Tax Commission statute provided for no notice or hearing before it. The court held there was no denial of due process because under Section 81, Code of 1906, he was authorized to appeal to the circuit court from the order of the board of supervisors approved by the Tax Commission at its equalization meeting. The court held one opportunity for a hearing was enough.

Stuart had three opportunities for a full hearing, one, when the tax rolls came back from the equalization meeting of the Tax Commission; two, under Sections 3191 and 3194 of the Code; three, on appeal from adverse decision of either of those meetings of the board to the circuit court.

## Dissenting Opinion.

**Smith, C. J.,** delivered a dissenting opinion.

I also am of the opinion that the decree of the court below should be affirmed, but my reason therefor is somewhat different from that of Judge Anderson. In order that my position may clearly appear, I will partially restate the case.

In 1940 the appellant's land in Scott County was assessed for taxation in the manner provided by law. His bill of complaint alleges that the value placed on his land, when the assessment roll was finally approved by the board of supervisors, is too high; that he is without adequate relief at law; and prays that the assessment be reduced to the true value of the land, and that the board of supervisors be commanded to enter said reduction and be restrained from levying a tax on the complainant's land until this is done; in other words, that the court reassess the land at its true value. The case was heard on bill, answer, and proof, and the bill was dismissed.

It appears from the bill of complaint, and the evidence in support thereof, that sometime after the approval of the assessment roll, the appellant, acting under Sections 3191, 3192, and 3194, Code of 1930, requested the board of supervisors to reduce the assessed value of his land. The board attempted to do so by an order to that effect on its minutes, but the State Tax Commission declined to approve the order. No claim appears in the bill of complaint nor in the evidence in support thereof, but this order of the board of supervisors reducing the assessed value on this land is still in force. Nor does such a claim appear in the original brief of counsel for the appellant. That question was raised by this court, as it had the right to do, and then submitted to counsel for argument. What the court now holds is that the order of the State Tax Commission declining to approve this order of the board

of supervisors is void, leaving that order in full force and effect, resulting in the assessed value of the land now being that fixed on this order of the board of supervisors.

The order of the Tax Commission refusing to approve the order of the board of supervisors reducing the assessed value on this land was made in full compliance with the provision therefor in Section 3194 of the Code, and, therefore, under all of the authorities of which I am aware, is valid, unless the provision that a reduction in the assessed value of land made by a board of supervisors becomes effective when, but not unless, it is approved by the State Tax Commission, violates either the state or federal constitution. The refusal of the State Tax Commission to approve this reduction in the assessment of the appellant's land is said by my associate to be void for the reason that when it was made the commission had no evidence before it bearing thereon. This is but another way of saying that this refusal of the Tax Commission was made in violation of the due-process-of-law requirements of the state and federal constitutions—that the provision of Section 3194 of the Code permitting the Tax Commission to do what it here did, violates the requirements of due process. To that question I now come.

Section 112 of our State Constitution requires that property "be taxed in proportion to its value," and that it "be assessed for taxes under general laws, and by uniform rules, according to its true value." This is the constitutional, and therefore exclusive, method for ascertaining the value of property for taxation. In obedience to this section of the Constitution, the legislature enacted Chapter 61 of the Code, making it apply to all property and providing therein uniform rules for determining the true value thereof for taxation. The appellant's property was assessed for taxation strictly in accordance with the provisions of this chapter of the Code, the final act in which was the approval of the assessment roll for the year 1940

The appellant, in the language of his counsel's brief, "does not complain here of any irregularity of the statutory method by which the authorities made up and completed the land rolls for 1940 and 1941. The various notices were given, and the orders were in the usual form:" to which may be added he did not appear before the board of supervisors pursuant to any of the notices for the consideration of the assessment, and made no sort of objection thereto, until long after the assessment roll had been finally approved. When property has been assessed in accordance with the statutory method therefor, the value placed thereon by the assessing authorities is conclusive on both the public and the owner of the land. Adams v. Clarke, 80 Miss. 134, 31 So. 216; Miller v. Citizens' National Bank, 144 Miss. 533, 110 So. 439; Sections 3172 and 3178 of the Code of 1930, except in a proceeding before the board of supervisors under Sections 3191, 3192, and 3194 of the Code.

The legislature having provided taxpayers with a plain and adequate procedure, meeting all of the requirements of due process, for preventing their lands from being overvalued for taxation when the assessment roll is being made up and approved, was under no duty, constitutionally or otherwise, to provide taxpayers who neglected to avail themselves thereof with another and later procedure for that purpose; and the above sections of the Code, in so far as they provide for the reduction of the assessed value of land after the approval of the assessment roll, are purely gratuitous and can be repealed by the legislature without violating any constitutional right of taxpayers, from which it follows that the legislature had the right, when enacting these sections of the code, to require the reduction in the assessed value of the land to be made in such manner and on such terms as it wished to prescribe. Consequently, no constitutional right of taxpayers was violated by not requiring the Tax Commission to act on evidence when determining whether it would approve or disapprove a reduction in the assessed value of land made by a board of supervisors.

But if I am mistaken as to this, and due process of law does require the Tax Commission to act here only on evidence, and, therefore, the provision to the contrary in Section 3194 is void, then that section, as well as Sections 3191, 3192, is void in toto, and the entire legislative plan outlined therein must fail. The order of the board of supervisors reducing the assessed value of land and its approval vel non by the Tax Commission are both essential to the consummation of the legislative purpose to permit the assessed value of land to be reduced only when both the board of supervisors and the State Tax Commission concur in so doing, and nothing in the sections, or their legislative history, indicate that the legislature would have enacted either of these essential elements without the other. Their legislative history demonstrates the contrary.

The sections of the Code of 1930 here under consideration formerly appeared as Section 4312, Code of 1906. Some years after the adoption of that Code, the State Tax Commission was created and given supervisory power over the assessment of property for taxation by boards of supervisors, and this court held in Board of Supervisors v. Laurel Mill, 130 Miss. 454, 94 So. 448, that the State Tax Commission had been given no supervisory power over reduction in the assessment of property made by the board of supervisors under Section 4312, Code of 1906. When the Code of 1930 was thereafter adopted, the legislature declined to re-enact Section 4312 as it appeared in the Code of 1906 and cured this defect in the legislative plan for giving the Tax Commission full supervision of the assessment of property for taxation by expressly providing that reductions in the assessed value of property could be made by boards of supervisors with, and only with, the approval of the State Tax Commission.